# WEST MAHANOY TOWNSHIP v. M. C. WATSON.

ERROR TO THE COURT OF COMMON PLEAS· OF SCHUYLKILL COUNTY.

Argued April 21, 1887—Decided May 9, 1887.

1. In an action for negligence the proximate and not the remote cause of the injury suffered is to be considered; and this is controlled not by time or distance, but by the succession of events. The question is, did the cause alleged produce the injury without another cause intervening, or by means of an intervening cause?

2. To determine that a negligent act was the proximate cause of the injury, the rule is that the injury must have been the natural and probable consequence of the negligence; such a consequence as under the circumstances of the case might and ought to have been foreseen by the defendant as likely to flow from his act.

3. When in an action for negligence the question arises whether the act complained of was the proximate or the remote cause of the injury, if the facts are disputed the question is for the jury, but if the facts are not disputed the question is one for the court.

4. A pair of horses and sleigh, driven after dark, struck an ash heap negligently left on a township road and the sleigh was overturned. The horses being frightened thereby, ran off the road and upon a railroad

track. . Overtaken by a train they were driven from the track, changed their course and ran along the track in an opposite direction, when they were struck by another train and killed. In an action against the township for damages, *Held* :

That the facts being undisputed, the court should have instructed the jury that the negligent act of the township was the remote and not the proximate cause of the loss of the horses, and for this loss the township was not liable.

Before MERCUR, C. J., GORDON, TRUNKEY, GREEN and CLARK, JJ.; PAXSON and STERRETT, JJ., absent.

No. 435 January Term 1887, Supt. Ct.; Court below, 294 July Term 1884, C. P.

In the court below this was an action in case for negligence by M. C. Watson against the township of West Mahanoy, Schuylkill county, for damages for the loss of a pair of horses, a sleigh and harness.

On January 16, 1884, two horses and a sleigh, owned by M. C. Watson, were being driven along a public highway in West Mahanoy township, Schuylkill county. Striking upon an ash heap, the sleigh was upset, the driver thrown out and the body of the sleigh separated from the runners. The driver was dragged some distance when he let go the reins. The horses then continued running along the township road and eventually got upon the track of the Lehigh Valley Railroad, where, after they were driven off by one overtaking train, they changed their course and, running in the opposite direction, were struck by another moving train and killed. Watson brought suit against the township to recover damages. In his declaration, the negligence charged in the first count consisted in allowing the ash heap upon the road, and in the second, in not having opened the road to the proper width; both counts claiming damages for the injury to the sleigh and harness and for the loss of the horses.

The case was in this court after a former trial, wherein there was a judgment for the plaintiff for $520, including $20 damages to the sleigh and harness, which judgment was reversed: 112 Penn. St. 574. The additional facts, shown by the plaintiff's testimony at a second trial, and which were undisputed, sufficiently appear in the opinion in this case.

Statement of Facts.

The following were certain points of the defendant township with the answers of the court thereto :

7. The plaintiff's undisputed testimony showing that these horses were killed, not on the township road, but on the Lehigh Valley Railroad, by a moving locomotive (not owned or controlled by the township), which ran upon and killed them, the negligence of the township, if any, was not the proximate, but the remote cause of the killing of the horses, and the plaintiff cannot recover their value in this action.

Answer : It is not disputed that the engine, No. 389, of the Lehigh Valley Railroad Company, while moving east, killed the plaintiff's horses, but whether or not the defendant is liable for such killing depends upon how the horses got there and how and when they encountered the engine, as we have heretofore instructed you, and we therefore decline to affirm this point and refer you to what we have heretofore said upon this subject as an answer to this point.

9. The uncontradicted testimony produced by the plaintiff shows that several miles from the scene of the upset, these horses had abandoned the township road and were going east on the Lehigh Valley Railroad track, engine No. 69 following them and occasionally whistling danger signals until the train overtook them, when they left the railroad track and turned directly back to the west, crossing the railroad track between the rear of coal train drawn by engine No. 69 and its pushing engine No. 403, which had been detached, and having continued their flight west for nearly two miles, came into collision with an eastward moving coal train drawn by engine No. 389, and were thus killed. The killing of the horses being admitted, as proved, the negligence of the township, if any, was the remote, and not the proximate cause of the killing of the horses, and the plaintiff cannot recover their value in this action.

Answer : We do not say that the uncontradicted facts of the case in this particular are or are not as they are here stated. We leave you to ascertain what the testimony before you bearing upon this subject proves. It is not denied that the horses encountered engine No. 389 of the Lehigh Valley Railroad Company, and were killed, but as to how they got there, whether by continuous flight without having recovered from

their original fright or after having recovered from the effects of the runaway, etc., we have submitted to you in our general charge as we believe to be our duty to do under the authorities given to us by our Supreme Court, and we need not now repeat what we have said to you upon this subject but a few minutes ago, but refer you to it as an answer upon this subject.

10. The undisputed testimony offered by the plaintiff shows that several miles from the scene of the upset, these horses running east on the railroad, being followed and overtaken by a whistling locomotive, got out of the way of the engine and, operated upon by a new fright, completely changed their course to run west instead of east, and thus by this change of direction of flight came into collision with another engine, which killed them. These facts show an independent intervening agency beyond the negligence of the township, which operated upon these horses and their fright, without which they could not have been killed when and as they were, and the plaintiff cannot recover their value in this action.

Answer: Whether these horses changed their course from east to west and thus encountered engine No. 389, or whether engine No. 69 struck them or the part of the sleigh or tongue to which they were attached and thus turned them around as Ryan testifies, you must ascertain from the testimony before you. As to the doctrine or rule of approximate and remote cause and the circumstances under which the township would or would not be liable we have heretofore instructed you in our general charge, and your attention is directed to what we then said in answer to this point.

The jury found for the plaintiff in $470, whereupon, after a motion in arrest of judgment and for a new trial was refused, the defendant took this writ assigning as error the answers of the court to the 7th, 9th and 10th points.

*Mr. S. H. Kaercher* and *Mr. Mason Weidman*, for the plaintiff in error:

1. The facts not being in dispute, it was the duty of the court to tell the jury whether the negligence of the township was the proximate or the remote cause of the killing of the horses : Hoag *v.* Railroad Co., 85 Penn. St. 293.

2. The court should have instructed the jury that under the undisputed facts of the case, the negligence of the township was not the proximate but the remote cause of the killing of the horses, and that the plaintiff below could not recover for that loss.

*Causa proxima non remota spectatur*, is a maxim of the common law, which simply means that the defendant shall be held liable for the natural consequences flowing from his act of negligence, such as could be reasonably expected to follow; the proximate and not the remote results. The question in such cases is : " did the cause alleged produce its effects without another cause intervening?" Penn. R. Co. v. Kerr, 62 Penn. St. 353; Hoag v. Railroad Co., 85 Idem 293 ; West Mahanoy Township v. Watson, 112 Idem 578; Bishop v. Schuykill Township, 2 Pa. S. C. Dig. 74.

*Mr. James B. Reilly* (with him *Mr. M. M. L'Velle*), for the defendant in error :

It was for the jury to determine, under all the facts and circumstances, whether the negligence of the defendant was the remote or the proximate cause of the damage sustained by the plaintiff below in the killing of his horses in the manner stated.

In Penn. R. Co. v. Kerr, 62 Penn. St. 355: " The sparks from the locomotive did not ignite the hotel. They fired the warehouse and the warehouse fired the hotel." In Hoag v. Railroad Co., 85 Penn. St. 293, " The water was an intervening agent."

The township officials knew, or should have known—they were bound to know—that their negligence in permitting the highway to be obstructed was attended with danger to others. The upsetting of a wagon or sleigh causing a team to run away, is a natural and probable result likely to flow from the obstruction negligently permitted to remain : Pittsburgh City v. Grier, 22 Penn. St. 67; Scott v. Hunter, 46 Idem 192 ; Hey v. Philadelphia, 81 Idem 44; Penn. R. Co. v. Hope, 80 Idem 377 ; Raydure v. Knight, 2 W. N. 713; Penn. and N. Y. C. & R. Co. v. Lacey, 89 Idem 458 ; Fritsch v. Allegheny City, 91 Idem 226.

OPINION, MR. JUSTICE GORDON:

As we now have this case presented to us we find the evidence much more full and complete than when it was here before. On this last trial the course of the horses was traced with accuracy from the point where the upset occurred, at the ash heap in the township road, to the place on the railroad where they were struck and killed by the moving locomotive. We have also that which we had not in the former case, a full and particular detail of the manner and immediate cause of their death. On this point we give a summary of the testimony of Jeremiah Ryan, the fireman of locomotive No. 69, and of Jonathan Bretz, engineer of No. 389, both witnesses for the plaintiff. Ryan says : The horses were first seen by him in full flight eastward, on the track of the railroad about twenty-five yards ahead of the engine, which was running at the rate of from fifteen to eighteen miles an hour; that the team was overtaken, and either the sleigh or the horses were struck by the locomotive which drove them from the track, and changed the course of their flight from an eastern to a western direction. He then left his engine and followed in the track of the horses, as he says, about one mile and a half, when he found they had been struck and thrown over an embankment; the one dead and the other mortally wounded. Bretz says, that at about 8:40 P. M., when coming down the mountain with his train, he discovered the horses on the track; signalled " down breaks twice," but before he could stop they were struck and thrown from the track over the embankment. Now, omitting entirely the effect that the pursuing train, giving out its warning signals, would have upon the flight of the horses, we have here two facts distinctly proved : first, that the course of the team was entirely changed by the stroke received from engine No. 69 ; second, the actual and immediate cause of the destruction of the plaintiff's property was its collision with engine No. 389. These facts narrow the case down to the single question : was the upset at the ash heap, on the township road, the immediate or direct cause of the loss of the horses ? As we have seen, the facts themselves answer this interrogatory in the negative, and necessarily determine the case in favor of the plaintiff in error. In the case of Hoag v. The Michigan & Lake Shore Railroad Co., 85 Penn. St. 293,

Mr. Justice Trunkey, then president of the Common Pleas of Venango, in his charge to the jury, on the trial of the above named case, said : " The immediate, and not the remote cause, is to be considered. This maxim is not to be controlled by time or distance, but by the succession of events. The question is, did the cause alleged produce its effects without another cause intervening, or was it to operate through, or by means of this intervening cause ? " As the principle here stated was adopted by the affirmance of this court, following Pennsylvania Railroad Co. v. Kerr, 62 Penn. St. 353, we may regard it as the settled law of this state, and we need hardly say, that under this rule, the plaintiff below ought not to have been permitted to recover the value of the horses : for the direct cause of the loss was not the overset in the township road, but the intervention of the locomotives. Moreover, in the case above cited, we have, per Mr. Justice Paxson, this rule stated, the rule also of The Railroad v. Kerr : " That in determining what is proximity of cause, the true rule is, that the injury must be the natural and probable consequence of the negligence ; such a consequence as, under the surrounding circumstances of the case, might and ought to have been foreseen by the wrong-doer as likely to flow from his act." Measured again by this rule, and the plaintiff's case fails ; for whilst the supervisors might have foreseen the upset on the ash heap, it was not possible for them to anticipate the ultimate result of the accident as it finally happened.

The counsel for the plaintiff have cited us to several cases which they regard as supporting their contention, but an examination of them will, we think, demonstrate that they are not at all in point. Scott v. Hunter, 46 Penn. St. 192, held : where one negligently causes property to be exposed to dangers which he knew, or in the exercise of ordinary prudence might have anticipated, he is responsible for the damage resulting therefrom, though his act may not have been the proximate cause. This is the rule of The Railroad v. Kerr, and, were the facts similar, would apply to the case in hand ; but as the facts are not similar, as the supervisors could not reasonably foresee that a comparatively trifling accident at the ash heap, would result in a more serious and fatal one on the railroad, the rule stated does not apply. Of Hey v. Philadelphia,

it may be said, that the want of guards along the bank of the river was the direct cause of the accident; at all events, the city officials ought to have known, from the circumstances surrounding the highway, that an accident such as happened might at any time occur, and were therefore bound to provide against it. Pittsburgh v. Grier, 22 Penn. St. 54, is further from the point than the cases cited, for in consequence of the pile of pig-iron which the city negligently permitted to lie on the wharf, the plaintiff's boat was compelled to assume a dangerous position, in consequence of which the injury complained of resulted.

It is also urged that the question of remote or proximate cause was for the jury and was properly submitted. This would be so were there any dispute about the facts, but where, as in this case, they are not disputed, the court should determine the question as a matter of law. "It is undoubtedly true, as a general proposition, that the question of proximate cause is for the jury, yet it has been repeatedly held that where there are no disputed facts the court must determine it:" West Mahanoy Township v. Watson, 112 Penn. St. 574; per Mr. Justice PAXSON. It follows from what has been said, that the plaintiff's recovery in this case should have been confined to the damage done to the sleigh and harness.

> The judgment is now reversed and a new venire ordered.