## Rumsey *v.* D., L. & W. R. R. Co., Appellant.

*Master and servant—Railroads—Risk of employment.*

When an employee of a railroad company is fully aware of the risks which he runs in a particular service, and nevertheless continues to perform the same services without complaint, he will be deemed to have assumed the risks incident to his employment.

A freight conductor employed for many years in switching trains on a short section of a railroad was killed while seated on the pilot of a shifting engine by collision of the engine with a wagon at a public crossing where no watchman was stationed by the railroad company.  *Held,* that the accident was one of the risks assumed by the decedent, and that his representatives could not recover damages for his death.

Argued April 11, 1892.  Appeal, No. 316, Jan. T., 1892, by defendant, from judgment of C. P. Luzerne Co., Oct. T., 1886, No. 826, on verdict for plaintiffs, Helen Rumsey et al.  Before PAXSON, C. J., STERRETT, GREEN, WILLIAMS, McCOLLUM and MITCHELL, JJ.

Trespass to recover damages for the death of husband and father of plaintiffs, alleged to have been caused by negligence of defendant.

At the trial, before WOODWARD, J., it appeared that Overton K. Rumsey, plaintiff's decedent, had been employed for several years by defendant as a freight conductor on the Bloomsburg division. His business was to shift cars with the switching engine " Rupert," which was under his charge, together with men making up his crew. His daily work was between Plymouth and Kingston stations, which are about three or four miles apart. North of Plymouth station is a public highway crossing the railroad, which at this point consists of four tracks. At the time of the accident the driver of a sprinkling wagon stopped his wagon at this crossing a few feet from the first track. He heard and saw a coal train pass, when he started, and had just got his horses on the track when the engine " Rupert" struck the team. One of the horses fell upon the flag staff of the engine, and struck Rumsey, who was sitting on the left side of the pilot of the engine, knocking him off and killing him. The evidence showed that Rumsey had gone to the pilot to give some instructions to a brakeman.

The court charged in part as follows :

"It is proved, gentlemen, that there was no watchman at this crossing. The road led from a main street of the borough of Plymouth to a ferry at the river. It has been used as a highway for forty or fifty years. At the point where it crosses the railroad there are four tracks, two of them constituting the main line of the D., L. & W. railroad, and the other two being used for sidings, upon which it was the custom to allow freight cars to stand. When the side tracks were thus occupied by cars, the view of the main line was obstructed for a considerable distance, so that a party driving on the road would not be able to see an approaching train. At the time of this accident cars were standing upon these sidings. The driver of the wagon testifies that the space left for the passage of teams between the cars was about fifteen feet wide, other witnesses place it at twenty to twenty-five feet. The driver also swears that he stopped and looked and listened and that he neither saw nor heard anything of an approaching train. Richard Lynn, a brakeman on the engine, testifies that the engineer could not

see the wagon at the crossing, from the engine. The map in evidence also shows the position of the tracks, and from it and the testimony of the witnesses you will be able to form an intelligent judgment as to the condition of this crossing on the day of the accident. I express no opinion, gentlemen of the jury, myself, on the question thus presented, but instruct you to find from the evidence whether the defendant is fairly chargeable with want of ordinary care, in view of the character of this crossing and the manner of its customary use, in omitting to station a watchman there." [1]

Defendant's points were as follows:

" 1. From the plaintiff's own evidence, the deceased was at the time of the accident in a place of known danger, and his negligence in being there contributed to cause the accident by which he lost his life, and, therefore, the plaintiff cannot recover. *Answer:* We decline to affirm this point and thus take the case from the jury: because we are not satisfied that the position occupied by the deceased upon the front part or pilot of the engine, at the time of the accident, under the peculiar circumstances of this case, constituted such clear concurrent negligence on his part as to justify the ruling requested in this point. [3, 4]

" 2. There is nothing in the evidence to show that the defendants omitted any duty which they owed to deceased, or were guilty of any negligence contributing to the death of plaintiff's husband." Refused. [2]

" 3. Under all the evidence in the case the plaintiff cannot recover, and the verdict must be for the defendant." Refused. [5]

Verdict and judgment for plaintiff for $4,000.

Defendant appealed.

*Errors assigned* were (1) portion of charge as above, quoting it; (2–5) answers to points, quoting points and answers.

*Andrew H. McClintock* and *Henry W. Palmer*, for appellant, cited on the question of the risk of employment, Mansfield C. & C. Co. v. McEnery, 91 Pa. 185; Lake Erie & Western R. R. v. Lyons, 119 Pa. 324; P. & R. R. v. Hughes, 119 Pa. 301; Golwitzer v. Pa. R. R., 1 Mona. 72; P. & C. R. R. v. Sentmyer, 92 Pa. 276; Kennedy v. R. R., 1 Mona. 271; Kelly v. B. & O. R. R., 11 Atl. R. 659; Sweeney v. Berlin & Jones E. Co., 101 N. Y. 520; Mich. Cent. R. R. v. Austin, 40 Mich.

247; Ind. Cen. R. R. v. Love, 10 Ind. 556; Ladd v. New Bedford R. R., 119 Mass. 412; Lovejoy v. B. & L. R. R., 125 Mass. 79; Mo. Pac. Ry. v. Somers, 14 S. W. Rep. 779.

*W. H. Hines, Gustav Hahn* with him, for appellee.

OPINION BY MR. JUSTICE McCOLLUM, October 3, 1892.

The accident was at a grade crossing and it may have resulted from the failure of the driver of the sprinkling wagon to look and listen, or from the neglect of the appellant's employees to ring the bell or blow the whistle. There is evidence that the driver immediately after the coal train passed and while the rear of it could be seen from the place where he stopped, started to cross the track. He doubtless took it for granted that the way was clear after the coal train was off the crossing and did not look and listen to discover whether another train was following it. There is evidence also that the approach of the locomotive which struck his team was not announced by the ringing of the bell or the blowing of the whistle. But the jury were correctly instructed that there could be no recovery in this case on the ground of a failure to give these signals, because such failure would be the negligence of a servant for which the appellant would not be liable to a fellow servant or his legal representatives; and the verdict does not inform us whether they were given, and, if they were not, whether the omission to give them caused or contributed to the accident. If the negligence of a fellow servant was the direct and immediate cause of the accident, it is by no means certain that this action can be maintained, even though it should appear that the appellant was negligent in not providing a watchman for the crossing. We do not intend, however, to discuss the matters to which we have referred; we merely allude to them in passing as they were suggested by a careful reading of the testimony, and the instructions to the jury.

The case is before us on the contention of the appellant that the court should have taken it from the jury on the ground that Rumsey's death was attributable to a risk incident to his employment and which with full knowledge of its character he had assumed, and to his own negligence in being at the time of the accident in a place of known danger and where his duties did not call him.

It appears from the undisputed evidence that Rumsey was

in the service of the appellant for twenty-three years, and during the three years immediately preceding his death, in the capacity of conductor of a train between Kingston and Plymouth in Luzerne county.    The distance between these points is about four miles.    His business was to shift cars, and to carry it on he had charge of a switch engine and a sufficient force of men.    In the prosecution of it he passed over the road several times daily.    At a point about three hundred and fifty feet north of Plymouth station, and within the limits of Plymouth borough, the railroad was crossed at grade by an old road which subsequent to the accident in question was accepted by the borough as a street.    At the crossing there were four tracks, the north bound and south bound tracks and two sidings. In passing by the old road from the main street of the borough to the river the sidings were first crossed, and if there were freight cars upon them, either north or south of the crossing, the view of the main tracks was somewhat obstructed.    No one knew better than Rumsey the exact situation at the crossing and the kind and amount of travel over it.    He knew from daily observation how and to what extent the sidings were occupied by cars, and he was perfectly familiar with all the conditions at that point which affected the safety of the public and the men engaged in running the trains.    With this knowledge he continued in the service of the appellant without complaint of any kind and without an intimation even that the presence of a watchman there would diminish a risk incident to his employment.    Under these circumstances the risk created by the crossing in question was assumed by him.    The rule on this subject is well stated in the American & English Encyclopedia of Law, vol. 14, pages 845–6, and abundantly sustained by the cases there cited.    It is as follows : When a servant employed by a railroad company plainly perceives the risks which he runs, and nevertheless remains performing the same services without complaint and without suggesting how his employment could be made less hazardous, he will be deemed to have undertaken to run the risks incident thereto.    This rule required an affirmance of the appellant's third point.

It is therefore unnecessary to consider the other questions raised in the case.

The fifth specification of error is sustained.

Judgment reversed.