## Behling *v.* Southwest Penn. Pipe Lines, Appellant.

[Marked to be reported.]

*Negligence—Remote and proximate cause—Pipe lines.*

A proximate cause is one which, in actual sequence, undisturbed by any independent cause, produces the result complained of.

A pipe line company is not liable for the burning of a house, where it appears that burning oil from a neighboring property flowed down upon the pipe line causing it to burst and throw a spray of burning oil upon the house. In such a case the pipe line is not the proximate cause of the injury. The causa causans, the true proximate cause of the burning of the house, is the descending flood of fire.

In such a case, if the facts are undisputed, it is the duty of the court to determine the question of proximate cause, and not to send it to a jury.

*Pipe line companies—Bursting of pipes.*

It seems that the bursting of a pipe line caused by burning oil flowing over the pipe line from neighboring property, is not such an element of danger as the pipe line company is bound to foresee and provide against for the protection of the property of third persons along its line.

Argued Oct. 17, 1893. Appeal, No. 38, Oct. T., 1893, by defendant, from judgment of C. P. Washington Co., May T., 1893, No. 63, on verdict for plaintiff, Marie Behling. Before GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and THOMPSON, JJ. Reversed.

Trespass for burning house. Before McILVAINE, P. J.

The facts appear from the opinion of the Supreme Court.

The court charged in part as follows:

" [If you find from all the evidence in the case that the burning of the oil in the stream, and its running down from above on and over the defendant's pipes, was a condition which the company, or its representatives in charge of the lines, could, as ordinarily prudent and careful men, easily have foreseen, and which under ordinary circumstances might have been expected, and the burning oil thus running over the pipes caused one of them to burst or break, and the company under existing circumstances had not used ordinary care and skill in laying, maintaining and protecting the pipe that burst, and that, in bursting, as a direct, natural and probable result, it threw burning oil or flame on the plaintiff's dwelling and fired it, then the

defendant would be liable.] [2]    Second; but, if from all the evidence you find that the plaintiff's buildings were fired by the oil which flowed down the run, or that any one of her buildings was so fired and from it the fire was communicated to the others, then the defendant is not liable, even if it was negligent in laying and maintaining its pipe line; or, if you find from all the evidence that the defendant's pipes, under all the circumstances, were laid and maintained with care and skill and in a proper manner, and burning oil running down the stream caused the pipe to burst, without any fault on the part of the company, then the plaintiff cannot recover, even if the bursting of the pipe and the oil thrown therefrom caused the plaintiff's property to be set on fire."

Plaintiff's point was among others as follows:

" 5. If the jury find that the defendant, exercising the care and diligence which a reasonably prudent and careful man would have exercised, knew or ought to have known, when it laid its lines in Robb's run, that, as a natural and probable result, any waste oil from the many wells in Robb's valley must pass down said run over said lines, and that the defendant knew that large quantities of oil did so pass down said run for several months prior to this fire, and that this oil was imminently liable to be set on fire, accidentally or otherwise, at any time, burn any rubbish in said run and heat the defendant's lines and cause them to break or burst; that defendants, exercising such reasonable care and diligence, knew, or ought to have known, that, in case of a fire at any of the wells draining into said valley, the burning oil therefrom, as a natural and probable result, would flow down said run over said lines, and heat them and cause them to break or burst; and if the jury further find that the defendant was guilty of negligence in locating, laying, operating and maintaining its lines in said run under such circumstances, and that by reason of such negligence, as a proximate cause, the plaintiff's house and property were set on fire and destroyed, then the defendant is liable and the verdict must be for the plaintiff for an amount that will compensate her for the injury she has shown that she sustained." Affirmed. [4]

Defendant's request for binding instructions was refused. [9]
Verdict and judgment for plaintiff for $1,485.

*Errors assigned* were (2, 4, 9) instructions, quoting them.

*Boyd Crumrine* and *M. F. Elliott, H. McSweeney* and *E. E. Crumrine* with them, for appellant.—The defendant was not guilty of negligence in locating, maintaining and operating its pipe line as it was located, maintained and operated at the time of the fire: Hauck v. Pipe Line Co., 153 Pa. 366; New York etc. R. R. v. Young, 33 Pa. 182; Struthers v. Ry. Co., 87 Pa. 282; Phila. & R. R. R. v. Hummell, 44 Pa. 379.

Defendant company was under no more obligation to anticipate the burning of the Butler well than plaintiff was to foresee it and to take precautionary measures against it: Brown v. Lynn, 31 Pa. 510; Reeves v. R. R., 30 Pa. 454.

Where no contractual relation exists, negligence must be proved affirmatively by him who alleges it: Pawling v. Hoskins, 132 Pa. 617; Cosulich v. Standard Oil Co., 122 N. Y. 118.

Even if the defendant were guilty of negligence in relation to the waste oil, its negligence was not the natural or proximate cause of the plaintiff's injury: Whart. Neg. § 134; Hoag v. R. R., 85 Pa. 293.

There was no actionable nuisance chargeable to the defendant, and it is liable only for culpable negligence: Rylands v. Fletcher, L. R. 1 Exch. Cas. 265, affirmed in 3 H. L. 330; Lentz v. Carnegie, 145 Pa. 612; Robb v. Carnegie, 145 Pa. 324; Blythe v. Birmingham Water Works Co., 25 L. J. (Exch.) 212; Wood on Railways, 743; Parke's Ap., 64 Pa. 137; Cleveland R. R. v. Speer, 56 Pa. 325; Struthers v. Dunkirk R. R., 87 Pa. 282; People v. R. R., 74 N. Y. 302; West Penn. R. R. Co.'s Ap., 99 Pa. 155; R. R. v. Young, 33 Pa. 175; Turnpike Co. v. R. R., 54 Pa. 345.

Negligence must be proved, not assumed: Cooley on Torts, 659; Penna. R. R. v. MacKinney, 124 Pa. 469; Laing v. Colder, 8 Pa. 479; Meir v. R. R., 64 Pa. 226; R. R. v. Anderson, 94 Pa. 358; Hayman v. R. R., 118 Pa. 511; Spear v. R. R., 119 Pa. 61; Thomas v. R. R., 148 Pa. 183; Farley v. Traction Co., 132 Pa. 61; Fearn v. Ferry Co., 143 Pa. 122; R. R. v. Napheys, 90 Pa. 135.

The alleged negligence was not the proximate efficient cause of the injury: Ry. v. Hinds, 53 Pa. 512; West Mahanoy Twp. v. Watson, 116 Pa. 344; Hoag v. R. R., 85 Pa. 293; R. R. v.

Kerr, 62 Pa. 353; Jackson Twp. v. Wagner, 127 Pa. 184; Herr v. Lebanon, 149 Pa. 227; Schaeffer v. Jackson Twp., 150 Pa. 145; Pass. Ry. v. Trich, 117 Pa. 390; Chartiers Twp. v. Phillips, 122 Pa. 601; Bunting v. R. R., 118 Pa. 204; Morrison v. Davis, 20 Pa. 171; Haverly v. R. R., 135 Pa. 50.

The facts upon which the questions of negligence and proximate efficient cause were to be determined were undisputed, and it was error to submit the questions to the jury: Smith, Neg. 22; Cooley on Torts, 666; West Mahanoy Twp. v. Watson, 112 Pa. 574; West Mahanoy Twp. v. Watson, 116 Pa. 351; Pass. Ry. v. Trich, 117 Pa. 400; Chartiers Twp. v. Phillips, 122 Pa. 601; Bunting v. Hogsett, 139 Pa. 363; Jutte v. Bridge Co., 146 Pa. 400.

*J. F. Taylor, W. F. McIlvaine* with him, for appellee.—Defendant was guilty of negligence in locating, laying, maintaining and operating its pipe line, as it was located, laid, maintained and operated at the time of the fire: Whart. Neg., 2d ed. § 274; 4 A. & E. Ency. L. 250; 6 Ib. 552; Ry. v. Gilleland, 56 Pa. 445; Keiser v. Gas Co., 143 Pa. 276; Pottstown Gas Co. v. Murphy, 39 Pa. 257; McGrew v. Stone, 53 Pa. 436.

Defendant cannot shield itself from the natural and necessary consequences of its own negligence, by attempting to hide behind the principle that it was not bound to foresee negligence in others. It did not have to foresee any such negligence in order to charge it with a duty. All that was necessary was for it to take account, as it was bound to do, of the existing conditions in and about Robb's run, and the natural and probable results likely to follow in case it laid its lines up that run under these conditions: McGrew v. Stone, 53 Pa. 436; B. & O. R. R. v. School District, 96 Pa. 65.

Defendant was negligent and that negligence was the proximate cause of plaintiff's injury. Defendant cannot relieve itself by pleading the negligence of a third party: Burrell Twp. v. Uncapher, 117 Pa. 363; Carlisle Boro. v. Brisbane, 113 Pa. 544; Koelsch v. Phila. Co., 152 Pa. 355.

The facts in the case were disputed, and the question of negligence and proximate cause were both for the jury: P. R. R. v. Barnett, 59 Pa. 259; Johnson v. Brunner, 61 Pa. 58.

The duty of a pipe line company in choosing a location for,

in laying, and in operating its pipe line, is not fixed but varies according to the circumstances; and, therefore, whether this particular company had exercised due care and prudence in this particular instance, was a question for the jury: Schilling v. Abernethy, 112 Pa. 437; Hydraulic Works Co. v. Orr, 83 Pa. 332; Neslie v. Pass. Ry., 113 Pa. 300; Penna. R. R. v. Peters, 116 Pa. 206; R. R. v. Coon, 111 Pa. 430.

The question, also, as to what was the proximate cause of the injury, was for the jury: Haverly v. State Line R. R., 135 Pa. 50; P. R. R. v. Hope, 80 Pa. 373; Lehigh Valley R. R. v. McKeen, 90 Pa. 123; Wagner v. Jackson Twp., 133 Pa. 61; Barthold v. Phila., 154 Pa. 109.

A pipe line or lines, to convey oil, laid as, and under the circumstances under which, defendant's lines were laid; and breaking and throwing burning oil on plaintiff's house and causing its destruction, as was done in this case, would have been a nuisance to plaintiff's property, if defendant had been unincorporated: Pottstown Gas Co. v. Murphy, 39 Pa. 257; Robb v. Carnegie, 145 Pa. 324; Lentz v. Carnegie, 145 Pa. 612; Hauck v. Pipe Line Co., 153 Pa. 366.

Under § 2, act June 2, 1883, P. L. 63, defendant was liable.

OPINION BY MR. JUSTICE WILLIAMS, March 26, 1894:

The house of the plaintiff, situated near the banks of Robb's run in the borough of McDonald, was burned on the night of the tenth of November, 1891. The defendant company was engaged in transporting oil from the wells of the McDonald oil field to its storage tanks, and to the markets in Pittsburgh and other cities. The plaintiff alleges that the burning of her house was due to the negligence of the defendant in laying its lines, and brings this action to recover its value. The important facts are not in controversy. The McDonald field extends over a large region, covering the country on both sides of the run, and extending over the tops of the hills above it. Many of the wells were unexpectedly large, and considerable oil was lost before the field was accommodated with lines sufficient for its transportation. There were several wells above Mrs. Behling's house, the waste oil from which had run into and down Robb's run before the lines reaching there could be laid. To secure and remove the product of these wells, a four inch line

was first laid up the run and along its course. This proved insufficient, and a three inch line was placed along by its side. The oil from the wells on the side and top of the hill was drawn into these lines and conveyed out of the field. Among the wells served by these lines was one known as the Butler well, which was some five or six hundred feet from the Behling house, farther up the hill, and near the run. Another was known as the Church well. This was on the opposite side of the run, some distance from it, and connected with the pipe lines along the run by a branch made of two inch pipe. The point of junction was near one hundred feet from the house, and, as we understand, lower down the stream. On the night of the tenth of November, 1891, the Butler well took fire. The derrick, engine house and machinery were destroyed, and the fire was communicated to the tanks in which about one hundred and fifty barrels of oil were standing at the time. The tanks soon gave way and the burning oil flowed into Robb's run and began to descend along its course towards the Behling house and the built-up part of the town lower down the stream. The people turned out in force to prevent the threatened general conflagration, and built a dam across the run to confine the oil so that it might burn there, instead of descending to the village. The fiery flood passed the Behling house and reached the dam near the point where the branch pipe from the Church well connected with the four inch line. The intense heat, caused by the burning oil in and just above the dam thrown up by the citizens to stop the descent of the oil, caused the branch pipe to burst, and for a few moments, until the oil could be shut off, a spray of oil was thrown towards and upon one corner of the house. The house took fire (but whether before or after the bursting of the pipe was one of the disputed questions of fact in the case), and was wholly consumed.

Two questions arise on these facts : First, was the laying of the defendant's pipe along Robb's run the cause of the destruction of the plaintiff's house by fire ? If it was, then the second question is whether the burning of the house was such a circumstance as, in the exercise of a proper measure of prudence, should have been foreseen as a natural or probable consequence of the location of the lines along the run ? The learned judge of the court below submitted both questions to the jury and

both were found in favor of the plaintiff. The first question rested on facts that were undisputed and was therefore for the court and not for the jury: Railroad Co. v. Taylor, 104 Pa. 306; Township of West Mahanoy v. Watson, 112 Pa. 574. The pipe line was laid for the transportation of oil for the producers who were within reach of it. This was a lawful purpose, undertaken by a corporation organized according to law, and carried on in the usual manner. No complaint is made of the material employed, nor of the manner in which the line was laid. It is not alleged that its use for the purposes for which it was intended was dangerous to the property of the plaintiff, nor that it might not have been operated for years without danger to any one. There is no negligence charged in either the construction or operation of the line. What is complained of is that it was located where it could be reached by the burning oil from the Butler well. But the lines following the course of the run did not give way notwithstanding the heat to which they were subjected. The two inch branch coming from the Church well was what gave way, at or near its connection with the line. This connection was not far from the bridge and the dam built by the citizens to check the flow of the oil down the run, and it was subjected to greater heat for that reason than it would otherwise have been. The flames from the burning oil were much higher and fiercer by reason of the accumulation of oil in the dam, reaching up, as some witnesses say, to a height of twenty feet or more. This stream of burning oil descending the run and passing within twenty-five feet of the plaintiff's house was, as to the pipe lines, an independent, intervening cause. But for this the two inch branch would not have burst, and, if it had, would have done no substantial injury. This is not a case where concurrent causes are involved, for the pipe line without the stream of burning oil was harmless. A stack of hay or straw standing on the bank of the run would have been fired by the flames from the oil, and might have communicated fire to the plaintiff's house and caused its destruction; but I apprehend it would not be contended that the stack was a concurring cause. In one sense it would have been the immediate cause of the burning of the house, as it was the instrument by which the fire was communicated to it; but the causa causans, the true prox-

imate cause of the burning of the house, would nevertheless be the descending flood of fire that kindled a flame in every inflammable object along its course. This branch line, like the stack of hay or straw, was a harmless object in itself, having no tendency to endanger the plaintiff's property. The fire came down the run, a wholly independent agency, and, confined by the temporary dam, the heat became so great as to destroy the connection, and set the escaping oil on fire. If the oil did reach and set fire to the house, the parallel between it and the stack is complete. It became dangerous only when it was destroyed by an independent intervening agency or cause, and because of its destruction. The pipe lines were not, therefore, the efficient or proximate cause of the plaintiff's loss. A proximate cause is one which in natural sequence, undisturbed by any independent cause, produces the result complained of. In this case the sequence led, not from the pipe lines or the branch from the Church well, but from the bursting of the tanks at the Butler well and the descent of the burning oil therefrom. Nor was the pipe line a concurring cause; for neither in its construction nor in its operation did it tend to produce the result. It did not run with the burning oil to affect the destruction of plaintiff's house, but it became the means or instrument of communicating the fire, under the compulsion of an independent efficient cause, by which the destruction was accomplished. The pipe line, like the stack we have supposed to stand on the bank of Robb's run, was an intermediate object through which the burning oil might communicate its fire to any other object that was within reach. It was the duty of the learned judge, upon the admitted facts of this case, to determine the question of proximate cause, and not to send it to a jury : Passenger Railway Co. v. Trich and Wife, 117 Pa. 390.

This is decisive of this case and renders the discussion of the second question unnecessary. The rule is well settled, however, that one is liable for such consequences of his acts as he should, in the exercise of reasonable prudence, foresee as probable or natural. The question is, did he know, or had he the means of knowing, that the result complained of would be likely to follow the action or undertaking upon which he was proposing to enter? What was the company that constructed this pipe line bound to anticipate and provide for? The answer must be, the

natural and probable consequences both of its construction and operation. It was bound therefore to care in the selection of the material, in securing good workmanship in its construction, and competent superintendence in its operation. The burning of the Butler well was not a probable or natural consequence of the laying of the pipe line. It had no relation whatever to the line. It was an accident to the property of another over which the owners of the line had no control. It is true that such accidents occasionally happen in an oil producing region, and that the owners of the pipe line, like the owners of buildings, have such possibilities to reckon with. But a pipe line to carry oil must reach the wells that provide it, and in so doing, the risk of injury from the burning of a well is one of the unavoidable risks incident to the business. We think the court below might well have disposed of the second question as a question of law, and instructed the jury that a casualty like the burning of the Butler well was not a consequence of the construction of defendant's lines; nor was the possibility of such an accident such an element of danger as the defendant was bound to foresee and provide against for the protection of the property of third persons along its line.

The judgment of the court below is reversed.