the trial there is testimony showing that the account is payable to Greeff & Co. So there can be no doubt as to the right of the plaintiffs to bring this action."

The foregoing statement that "he testified that all the accounts for goods sold by him were payable to the plaintiffs by written agreement" will be seen, by reading Kraft's testimony, to refer to a "written understanding," as he expressed it, between himself and the plaintiffs, and not, as one would be led to believe by the brief, as one between himself and defendants. Although it is clear that defendants knew that their bills might be made payable to the plaintiffs, there is not a particle of testimony in the case to show that the defendants ever promised or agreed to make payments to Greeff & Co., or that Greeff & Co. are the real parties in interest. Kraft says that Hempstone, defendants' buyer, "knew to whom the bills were to be paid." That fact alone would not give plaintiffs a right of action. The record is barren of any testimony upon which a judgment in favor of these plaintiffs would bar an action for the same relief brought by Griffon & Co. The defendants insisted, by motion made to dismiss both at the close of the plaintiffs' case and at the close of the whole case, that plaintiffs had failed to show a cause of action against defendants, and, upon a denial of such motions, duly excepted thereto. The motion to dismiss should have been granted. For the reasons stated, it would have been error on the part of the trial judge to direct a verdict for the plaintiffs at the close of the case, and it was error to direct it nunc pro tunc at the time it was done. That being so, it is unnecessary to determine whether, if the plaintiffs' case had been free from the defect referred to, the trial judge, by implied consent of the parties, had the power, after the adjournment of the term at which the issues were tried, to set aside the general verdict rendered by the jury in favor of the defendants, and to direct a jury which had been discharged to render a verdict for the plaintiffs nunc pro tunc.

The judgment and order appealed from should be reversed, and a new trial ordered, with costs to appellants to abide the event. All concur.

---

(87 App. Div. 227.)

ROEDECKER v. METROPOLITAN ST. RY. CO.

(Supreme Court, Appellate Division, First Department. November 6, 1903.)

1. CARRIERS—STREET RAILROADS—INJURIES TO PASSENGERS—PROXIMATE CAUSE.
　　Plaintiff, who was directed by the conductor of a horse car to ride on the front platform, was injured by being kicked by one of the horses. By reason of the driver's negligence in driving the horses at a high rate of speed the horse which kicked plaintiff fell as the car was rounding a curve. The car was stopped, and the driver and others moved it back from the fallen horse, which, in his endeavor to release himself, kicked plaintiff while standing on the platform. Held, that the driver's negligence ended with the fall of the horse, and therefore was not the proximate cause of plaintiff's injury.

Appeal from Trial Term, New York County.

Action by Nicholas Roedecker against the Metropolitan Street Railway Company. From a judgment in favor of plaintiff, and from

an order denying defendant's motion for a new trial, it appeals. Reversed.

The plaintiff sues to recover damages for injuries inflicted by being kicked by one of the defendant's horses while he was a passenger on the front platform of defendant's horse car proceeding easterly along Prince street into the Bowery on the afternoon of September 2, 1899. The negligence alleged is that the driver drove the horses so recklessly and at such a high rate of speed at the intersection of Prince street and the Bowery that one of the horses fell, and in endeavoring to extricate himself injured the plaintiff. The Prince street cars turn from an easterly to a northeasterly direction at the Bowery, and proceed across it, and thence easterly into Stanton street. The accident, it is claimed, occurred upon the curve from Prince street, the horse falling just before reaching the westerly rail of the southbound Third avenue track. The plaintiff is a painter, and, with his son, boarded the horse car carrying paint pots, and was told by the conductor to go to the front platform. There he deposited his paint pots, and stood behind and to the right of the driver, about a foot from the right-hand step of the front platform. There were five or six people on the platform, and the car was crowded. The plaintiff's evidence is that as the car approached the Bowery the horses were going fast, and that there was a south-bound Third avenue car in sight, and to get ahead of it the driver whipped the horses into a run, and as they approached the track the right horse fell on his right side, and the car ran up to him and over his hind quarters, and he struggled to extricate himself, and the driver and some others jumped off, while plaintiff stood still upon the platform, and they pushed the car back from the horse, and as the car was moving backward the horse got his left leg out, and kicked in between the car and the front dashboard and struck plaintiff in the leg. A passenger on the car testified that the horses were running, and that one of them fell, and that after the car stopped he got off with two or three men. He says: "We pushed the car back, and I saw the horse after a while rise up his foot and kick the man in the leg." "The car started to go back, and he started to release himself, and he got one foot out before the car was clear of him, and I saw the horse kick Roedecker." "The car kept on moving back after Mr. Roedecker was kicked." Motion to dismiss the complaint was denied, and exception taken by the defendant, who then introduced evidence tending to support a different version of the accident, namely, that the horse did not fall because running and being negligently driven on the curve, but because, while proceeding slowly, he slipped upon the asphalt; and that the plaintiff when kicked was on the street, and not upon the platform. The motion to dismiss the complaint was renewed, and denied, and an exception was taken. The jury found a verdict in plaintiff's favor, and from the judgment so entered and an order denying a new trial the defendant appeals.

Argued before VAN BRUNT, P. J., and HATCH, PATTERSON, and INGRAHAM, JJ.

Arthur Ofner, for appellant.
Louis Steckler, for respondent.

VAN BRUNT, P. J. Assuming that the driver of the car was negligent in whipping his horses in going around a curve, so as to cause one of them to fall upon the ground and under the car, the question still remains whether such negligence in the operation of the car and in the management of the horses was the proximate cause of the plaintiff's injuries, for which the defendant is legally liable. In the disposition of this legal question we are not confronted with any serious conflict as to the facts. The fair inference therefrom is that when the horse had fallen the front part of the dashboard of the car struck him, and so held him that it was necessary, in order that he

302 NEW YORK SUPPLEMENT

might get up, to push the car back and away from him, and that it was after this was done that, the horse's feet being free, he kicked violently before rising, and in so kicking reached the plaintiff, who was on the front platform of the car, and, by striking his leg, inflicted the injuries of which complaint is made. Narrowed down, therefore, the legal question is whether or not the negligent operation of the car and management of the horses prior to the fall of the horse was the proximate cause of the plaintiff's injuries.

There are many cases in which this question of proximate cause has been considered, only a few of which will be noticed. Lowery v. Manhattan Ry. Co., 99 N. Y. 158, 1 N. E. 608, 52 Am. Rep. 12; Kerrigan v. Hart, 40 Hun, 389; Storey v. Mayor, 29 App. Div. 316, 51 N. Y. Supp. 580; Laidlaw v. Sage, 158 N. Y. 73, 52 N. E. 679, 44 L. R. A. 216; Lewis v. Flint R. R., 54 Mich. 55, 19 N. W. 744, 52 Am. Rep. 790. In the Lowery Case, supra, fire fell from the locomotive on defendant's road upon a horse attached to a wagon in the street below and upon the hand of the driver. The horse became frightened and ran away, and the driver attempted to drive him against the curbstone to arrest his progress. The wagon passed over the curbstone, threw the driver out, and the plaintiff, who was on the sidewalk, was run over and injured. It was therein said:

"It is difficult to disconnect the final injury from the primary cause, and say that the damages accruing are not the natural and necessary result of the original wrongful act. The defendant was chargeable with an unlawful act, which inflicted an injury upon the driver and horse in the first instance, and ultimately caused the injury sustained by the plaintiff. The injury originally inflicted was in the nature of a trespass, and the result which followed was the natural consequence of the act. So long as the injury was chargeable to the original wrongful act of the defendant, it is not apparent, in view of the facts, how it can avoid responsibility. There was no such intervening human agency as would authorize the conclusion that it was the cause of the accident, and therefore it cannot be said that the damages were too remote."

This is the case principally relied upon by the plaintiff, but we think in the part of the opinion from which we have quoted that the distinction between the two cases is clear. After the negligent act in permitting the coal to fall on the horse, and before the injuries inflicted upon the plaintiff, there was no intervening agency. In the case at bar, however, we have the fact appearing that the natural and probable consequence of the driver's negligence ended with the fall of the horse and the stopping of the car, up to which time the plaintiff was uninjured; and it was only because of another independent and subsequent cause, which was neither the probable, natural, nor necessary consequence of the fall—namely the kicking of the horse while the car was being pushed back and away from him so that he might rise—that the plaintiff was injured. This court had occasion to examine the subject of proximate cause in the case of Storey v. Mayor, supra, and as therein said:

"The rule, 'Causa proxima, non remota, spectatur,' is one difficult of application. In Parsons on Contracts (vol. 3 [7th Ed.] *p. 179) it is said: 'Every defendant shall be held liable for all of those consequences which might have been foreseen and expedited as the result of his contract, but not for those which he could not have foreseen, and was therefore under no moral obligation

to take into his consideration.' The test given by that author is: 'Did the cause alleged produce its effect without another cause intervening, or was it made operative only through and by means of this intervening cause?' As said again in Bouvier's Law Dictionary (Rawle's Revision, vol. 1, p. 293): 'It is not merely distance of place or of causation that renders a cause remote. The cause nearest in the order of causation without any efficient concurring cause to produce the result may be considered the direct cause. * * * Proximate cause, it may be generally stated, is such adequate and efficient cause as, in the natural order of events, and under the particular circumstances surrounding the case, would necessarily produce the event; and this, having been discovered, is to be deemed the true cause, unless some new cause not incidental to, but independent of, the first, shall be found to intervene between it and the first. * * * A proximate cause must be the act or omission of a responsible human being, such as, in ordinary natural sequence, immediately results in the injury. Whart. Neg. § 73. It is a cause which, in natural sequence, undisturbed by any independent cause, produces the result complained of (160 Pa. 359 [28 Atl. 777, 40 Am. St. Rep. 724]); and the result must be the natural and probable consequence such as ought to have been foreseen as likely to flow from the act complained of. * * * If two causes operate at the same time to produce a result which might be produced by either, they are concurrent causes, and in such case each is a proximate cause; but if the two are successive, and unrelated in their operation, one of them must be proximate and the other remote. 149 Pa. 222 [24 Atl. 207, 16 L. R. A. 106, 34 Am. St. Rep. 603].' "

In Shearman & Redfield on Negligence (5th Ed.) § 26, the rule is thus stated:

"The proximate cause of an event must be understood to be that which, in a natural and continuous sequence, unbroken by any new independent cause, produces that event, and without which that event would not have occurred."

And in Laidlaw v. Sage, supra, Judge Martin, delivering the opinion of the court, says (pages 99, 100, 158 N. Y., and page 688, 52 N. E.):

"As has been said in an anonymous article in the American Law Review: 'A proximate cause is one in which is involved the idea of necessity. It is one the connection between which and the effect is plain and intelligible. It is one which can be used as a term by which the proposition can be demonstrated; that is, one which can be reasoned from conclusively. A remote cause is one which is inconclusive in reasoning, because from it no certain conclusions can be legitimately drawn. In other words, a remote cause is a cause the connection between which and the effect is uncertain, vague, or indeterminate. It does not contain in itself the element of necessity between it and its effect. From the remote cause the effect does not necessarily flow. * * * This idea of necessity—the necessary connection between the cause and the effect—is the prime distinction between a proximate cause and a remote cause. The proximate cause being given, the effect must follow. But, although the existence of the remote cause is necessary for the existence of the effect (for unless there has been a remote cause there can be no effect), still the existence of the remote cause does not necessarily imply the existence of the effect. The remote cause being given, the effect may or may not follow.' 4 Am. Law Review, 201, 205."

It is unnecessary to quote further from the authorities, nor can it be said that they are all to be reconciled; but we think the principle to be evolved from their consideration is that, although a situation may be produced by negligence, it is only for injuries which probably, naturally, or necessarily flow from such negligence, without the intervention of another and a distinct cause or agency, that the author of the negligence can be held liable; and this would exclude injuries resulting from another, subsequent, different, and independent cause. Apply

ing this rule, we think the contention of the appellant is sound that in the case at bar the kicking of the horse while the car was being pushed from him was not a necessary, natural, or probable consequence of his having fallen. Were this to be expected or likely to happen, the plaintiff, having knowledge of the situation, and the opportunity to reach a place of safety, would not have remained on the platform. We think the negligence alleged resulted and ended in causing the horse to fall and in stopping the car. It was an extraordinary occurrence that afterwards the horse should have kicked the plaintiff, who was standing upon the platform of the car. As said in Kerrigan v. Hart, supra:

"That such a thing is possible is proved by the happening of the accident, * * * but that such a thing was probable or likely to occur is absurd."

And as said also in the Storey Case, supra, from which we have already quoted:

"We must be careful to avoid confusing two things which are separate and distinct, namely, that which causes the injury and that without which the injury could not have happened. * * * If, after the cause in question has been in operation, some independent force comes in and produces an injury, not its natural or probable effect, the author of the cause is not responsible."

We do not think it can be held upon the facts here appearing that the negligent operation and management of the car was the proximate cause of the plaintiff's injury. There is no claim made that in the effort to extricate the horse after he had fallen, or in handling him so as to permit him to get upon his feet, there was any negligence for which the defendant would be liable; but, as stated, the plaintiff's contention is merely that, the defendant having been negligent in getting the horse into his prostrate position on the ground, it was liable for all injuries subsequently inflicted by the horse.

As this contention, in our opinion, is not legally sound, we think it was the duty of the trial judge to grant the motion at the close of the case to dismiss the complaint, and that his refusal was error, for which this judgment and order must be reversed, and a new trial ordered, with costs to the appellant to abide the event.

INGRAHAM and HATCH, JJ., concur. PATTERSON, J., concurs in result.