Fitzgerald, Appellant, *v.* Pennsylvania Railroad.

Argued October 15, 1935.

Before KELLER, P. J., BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*Frank J. Eustace, Jr.*, with him *Wilson & McAdams*, for appellant.

*Philip Price*, with him *Theodore Voorhees* and *Barnes, Biddle & Myers*, for appellee.

OPINION BY PARKER, J., April 16, 1936:

The plaintiff brought this action in trespass under the federal Employers' Liability Act to recover damages for injuries received by him. The sole allegation of negligence, as to which proofs were offered on the trial of the cause, was that the injury was due to the failure of the defendant to furnish a sufficient number of men to perform an assigned task with safety to the plaintiff. A jury returned a verdict for plaintiff and thereafter judgment n. o. v. was entered for the defendant by the court below. Plaintiff has appealed to this court, complaining of the entry of judgment.

The court below in an opinion filed correctly stated the general situation to be as follows: "On May 17, 1933, the plaintiff with two other employees, named Dentino and Spratt, under orders from the defendant, loaded a gondola car with 33 foot scrap rails in Philadelphia for shipment to Weirton, West Virginia. When it was discovered that the car was over loaded, the plaintiff and Dentino were asked the next day to take off 7 or 8 rails and place them in another car. The two cars stood opposite each other on parallel tracks 15 to 17 feet apart. The plaintiff was in charge of a moveable crane, operated by means of a gasoline engine, which crane was placed between the two cars. The

crane was equipped with a revolving boom, from the end of which swung tongs or grab irons, raised and lowered by means of a steel cable winding on a drum. Dentino stood upon the rails in the loaded car, adjusted the tongs to one rail at a time, guided the rail as it was raised and swung away, and the plaintiff then dropped it in the opposite empty car, or upon the ground if it turned to an angle which did not permit it to enter the car. In this manner four rails were removed, two of which were placed in the empty car and two on the ground. Dentino attached the tongs to a fifth rail, which the plaintiff had raised a few inches, when he observed that Dentino's foot was caught between rails in the car. He quickly lowered the rail, which had turned so that it came to rest across the car. Its position there was insecure, probably because the rails in the car rose above the level of the sides. The plaintiff mounted the car, stood upon the four inch wide top of the side or end, and with the aid of a lining bar moved the rail which held Dentino's foot. As he did so the rail he had just lowered across the car moved, struck him, as he believes, on the heels of his shoes, so that he fell to the ground and the rail fell upon him."

The appellee contends that there was not sufficient evidence to support the allegation of the plaintiff that three men instead of two should have been assigned to unload the seven or eight rails as a matter of safety to the men, and the court below expressed doubt on the same subject. We pass by that contention except as it may appear in connection with other reasons assigned for our conclusions.

1. Assuming for the sake of argument only, that there was sufficient evidence to support a finding that a third man should have been provided by the defendant, we are of the opinion that the failure to assign such additional help was not the proximate cause of the injury. Considering the facts in a light most

favorable to the plaintiff, the immediate cause of the injury was the movement of the rail by reason of the incorrect position in which it was placed by plaintiff himself and the contact of the rail with plaintiff's heels, resulting in his fall from the car. This naturally leads to an inquiry as to whether this intervening act was so distinct that the injury must be imputed to it as the proximate cause and not to the more remote alleged wrong of defendant in failing to furnish sufficient help.

As the legal question presented arises under a federal statute we are bound by the decisions of the United States Supreme Court. "The primary cause may be the proximate cause of a disaster, though it may operate through successive instruments, as an article at the end of a chain may be moved by a force applied to the other end, that force being the proximate cause of the movement, or as in the oft cited case of the squib thrown in the market place ...... We do not say that even the natural and probable consequences of a wrongful act or omission are in all cases to be chargeable to the misfeasance or nonfeasance. They are not when there is a sufficient and independent cause operating between the wrong and the injury. In such a case the resort of the sufferer must be to the originator of the intermediate cause. But when there is no intermediate efficient cause, the original wrong must be considered as reaching to the effect, and proximate to it. The inquiry must, therefore, always be whether there was any intermediate cause disconnected from the primary fault, and self operating, which produced the injury": M. & St. P. R. R. Co. v. Kellogg, 94 U. S. 469.

Any number of causes and effects may intervene between the first wrongful cause and the final injury, and if they are not such as might or ought to have been foreseen by the original wrongdoer as likely to flow from his acts, and except for which the final injury could not have happened, then the consequences

must be deemed too remote to constitute the basis of a cause of action. It has been said that proximate cause is probable cause, and remote cause is improbable cause. The inquiry is, was there an unbroken connection between the wrongful act and the injury—a continuous operation. It must be determined whether the "facts constitute a succession of events, so linked together that they become a natural whole, or whether the chain of events is so broken that they become independent, and the final result cannot be said to be the natural and probable consequence of the primary cause, the negligence of the defendants": Hoag v. L. S. & M. S. R. R. Co., 85 Pa. 293, 297.

As we have indicated the evidence of plaintiff as to the duty which defendant owed to him to provide sufficient help was meager, but viewing the testimony in a light most favorable to plaintiff, it was to the effect that a third man should have been provided by defendant who would have been located on the car to which the rails were being transferred, and whose duty would have been to guide or turn the rail so that it could be deposited in the car. The plaintiff, as craneman, had removed four of the eight rails from the car in which Dentino was located, two of which rails had been placed in another car, and two had been deposited on the ground. He had lifted the fifth rail a few inches above the sides of the car from which it was being removed when he learned that Dentino's foot was caught, although he did not hear him call for help. Plaintiff concluded that Dentino needed immediate assistance and he quickly lowered the rail, leaving it in an insecure position, resting on the side of the car and perhaps on some of the rails and went to his aid. He testified that when the rail left Dentino, it started swinging in the air and that he set it down so that it would not swing around and hit Dentino or come around and hit the boom. If there had been a third man present his position would have been in the other

car and he would have been there for the purpose of guiding the rail so that it could be placed in that car. Plaintiff also testified that when he found the rail had left Dentino's control, it could have been moved over the second car and thrown anywhere on the ground beyond.

The failure to place the rail in a secure position, which was the immediate cause of the injury, was not caused or set in motion by the alleged wrong of the defendant as in the case of Dannenhower v. W. U. Tel. Co., 218 Pa. 216, 67 A. 207. Therefore there could not be said to be an unbroken connection between the alleged wrong of the defendant and the injury. In fact the alleged wrong was not even a remote cause of the accident. The immediate cause of the injury was not connected with or dependent upon the failure to provide three men, but was the sole cause and responsible alone for the injury received by plaintiff. It cannot be said that the rail was placed in the dangerous position because of lack of help. If the craneman, as he testified himself, was compelled to act hastily because of the predicament of Dentino, then it would not have made any difference if there had been a man in the second car. In addition, the plaintiff admitted that he could have placed the rail on the ground just as he had done with two rails. The appellant also suggests that the third man might have gone to the aid of Dentino, but this is pure conjecture. The plaintiff said that there was danger that the rail might strike Dentino and for that reason he set it down where he did. Applying the final test to determine whether the failure to employ sufficient help was the proximate cause of the injury, we must inquire whether the accident was a foreseeable result of the failure of the defendant to furnish a third man. To hold the defendant liable requires us to find that the defendant might and could have anticipated that the plaintiff would place the rail in an insecure position. Certainly the defendant was not called upon

to anticipate such act upon the part of the plaintiff.

In the case of Township of West Mahanoy v. Watson, 116 Pa. 344, 9 A. 430, the officers of the township negligently allowed an ash heap to remain after dark on a township road. A pair of horses, drawing a sleigh, struck the obstruction, were frightened, and ran upon a railroad track where they were struck and killed. It was held that the trial court should have instructed the jury that the negligent act of the township was the remote and not the proximate cause of the loss of the horses. The facts in the case we are considering are more favorable to the defendant than in the case cited.

The defendant offered no evidence and the uncontradicted facts were developed by the plaintiff. Consequently there was no dispute as to the facts. It follows that the question of proximate cause was one for the court and should not have been left to the jury. Rhad v. Duquesne Light Co., 255 Pa. 409, 100 A. 262; Behling v. S. W. Penn. P. L., 160 Pa. 359, 28 A. 777; West Mahanoy Twp. v. Watson, supra.

2. In any event, the plaintiff assumed the risk of undertaking to reload the rails in question with the assistance of one other man. He was an experienced man, thoroughly familiar with the nature of the work to be performed, and had been doing the same kind of service for three or four years. He had loaded the car with rails the day before, and when he was assigned to the work with only one man to help him, the risk was known and comprehended by him. Being an experienced craneman, he was as familiar with the requirements and nature of the work as the assistant supervisor who directed the work to be done. In Rumsey v. D. L. & W. R. Co., 151 Pa. 74, 25 A. 37, it was claimed that an accident was caused by the failure of defendant railroad company to furnish an additional man, a watchman at a dangerous crossing. It appeared that the employee who was killed at the crossing "was perfectly familiar with all the conditions at that point which affected the safety of the

public and the men engaged in running the trains." Our Supreme Court there said: "With this knowledge he continued in the service of the appellant without complaint of any kind, and without an intimation, even, that the presence of a watchman there would diminish a risk incident to his employment. Under these circumstances, the risk created by the crossing in question was assumed by him." In Herron v. American Steel & Wire Co., 230 Pa. 90, 79 A. 228, the plaintiff had undertaken to perform a task with less men than were usually employed. It appearing that the employee was thoroughly familiar with the risks involved, it was again held that he had assumed the risk of the employment. Also see Dobra v. Lehigh Valley Coal Co., 250 Pa. 313, 95 A. 465. In the federal jurisdiction the same rule prevails: Lake v. Shenango Furnace Co., 160 Fed. 887; Cartwright v. Atchison, T. & S. F. Ry. Co., 228 Fed. 872; Hallstein v. P. R. R. Co., 30 Fed. (2d) 594. In the absence of an emergency, where a servant knows or ought to know that the master has furnished too few servants for the reasonably safe prosecution of the work he assumes the risks incident to working with insufficient assistants. This is especially true where the work is left to a servant who is an expert. When a servant discovers that the force for work is insufficient and his safety is imperiled, it is his duty to quit the service: 39 C. J. Sec. 947.

It is to be noted that by sec. 4 of the federal Employers' Liability Act the rule that an employee is deemed to assume the risk of injury, even if due to the employer's negligence, where the employee voluntarily entered or remained in the service with an actual or presumed knowledge of the conditions out of which the risk arose, is abrogated only where the employer's violation of a statute enacted for the safety of his employee, contributed to the injury: Mondou v. N. Y., N. H. & H. R. Co., 223 U. S. 1, 32 S. Ct. 169, 175; Seaboard A. L. Ry. Co. v. Horton, 233 U. S. 492, 34 S. Ct. 635.

The judgment of the court below is affirmed.