# THE S. S. PASS RY. CO. v. E. M. TRICH AND WIFE.

ERROR TO THE COURT OF COMMON PLEAS NO. 2 OF ALLEGHENY COUNTY.

Argued October 25, 1887—Decided November 11, 1887.

1. When, in an action for negligence, the fact is undisputed in the evidence that the injury received was inflicted by an intervening agency over which the defendant had no control, the question of remote or proximate cause must be determined by the court and the jury instructed accordingly.
2. The plaintiff was upon the rear platform and about to enter a street-car, when the driver whipped up to avoid a collision with a runaway horse and carriage. The abrupt jolt communicated to the car threw the plaintiff to the ground, when she was immediately struck by the runaway and injured: *Held*, that the court, upon request, should have instructed the jury that, even if the car-driver was guilty of negligence, such negligence was not the proximate cause of the injury and the plaintiff could not recover.

Before GORDON, C. J., PAXSON, STERRETT, GREEN and WILLIAMS, JJ.; TRUNKEY and CLARK, JJ., absent.

Nos. 60, 61 October term 1887, Sup. Ct.; court below, Nos. 617, 618 January Term 1885.

Two causes were tried together in the court below, one by Edward M. Trich, and the other by Edward M. Trich and Sarah W., his wife, in right of the wife, against the South Side

Charge of Court below.

Passenger Ry. Co., to recover damages for personal injuries to Mrs. Sarah W. Trich occasioned by the alleged negligence of a car-driver in the employ of the defendant company.

On April 5, 1882, Mrs. Trich and her father, Mr. John W. McCully, when at the corner of Third and Smithfield streets, Pittsburgh, hailed a street-car coming up Third just as it reached Smithfield street. The cars in use were what are commonly called "bob-tails," having a driver but no conductor, with an ordinary platform and rail at the rear end, approached by steps on either side. The car started off rapidly when Mrs. Trich had one foot on the platform and the other on the step, with her hand holding the rail; and as it reached the middle of Smithfield, Mrs Trich not yet having entered, the driver whipped up suddenly to avoid a collision with a runaway horse and carriage seen to be coming down Smithfield. The abrupt motion communicated to the car threw Mrs. Trich from the platform and just as she alighted she was struck by the runaway and severely injured.

At the trial on January 12, 1887, before THOMAS EWING, P. J., the facts were shown as they more fully appear in the charge, *infra*, when the defendant presented the point which with its answer was as follows :

It being the undisputed evidence in the case that Mrs. Trich was not injured by falling off the defendant's car, but by being struck by a runaway horse, even if the driver of the car was guilty of negligence, such negligence was not the proximate cause of the injury, and the plaintiff cannot recover.

Refused. It is a question for the jury under the evidence and under the further instruction of the court.[1]

The court charged inter alia :

The plaintiffs claim to recover from the Passenger Railway Company, on the ground that it was guilty of negligence that contributed to and caused the injury of which the plaintiffs complain. It seems that on the 5th of April, 1882, Mrs. Trich, who lives in McKeesport, was in the city of Pittsburgh, and she and her father, Mr. McCully, were at the corner, or near the corner, of Smithfield and Third streets. Mrs. Trich undertook to get on a car of the defendant company—whether she was on entirely or not there is a dispute in the testimony— but she was thrown off, jolted off, or got off, and she appears

Charge of Court below.

to have been immediately knocked down by a horse and vehicle, passing rapidly, and carried senseless into Mr. Johnston's drug store. A physician was called, and after some time she was taken over to her sister's on the south side of the river, where she remained until the next day, when she was taken home to McKeesport.

To entitle the plaintiffs to recover there must be two things found by the jury from the testimony, namely: first, that the defendant company, or its agents, which is the same thing, were guilty of negligence that contributed to and caused the accident or injury; and, second, that Mrs. Trich was not guilty of any negligence which contributed to the injury. You must find both these propositions in favor of the plaintiffs, or else your verdict should be for the defendant. Negligence is not to be imputed to either party without proof, and it is immaterial where that proof comes from if it is in the case.

Negligence is that want of ordinary care, prudence and skill which a prudent person will exercise under the circumstances of the case, great danger requiring great vigilance. An action that in one set of circumstances would be ordinary care, might in another be very great negligence. The testimony is contradictory as to what the actual circumstances are; and it is not very strange. We usually have these contradictions. Such accidents generally occur in a much shorter time than the people who saw them imagine, and it is a rare case that those who see the matter are not excited, and a still rarer case that the parties immediately connected with it are not excited; they sometimes forget, a few minutes after, just how the order of events was and what was done. Now Mrs. Trich says she got on the car and that the car stopped. She admits that she is not familiar with the location and that her recollection is indistinct as to the precise place of stoppage, or place that she undertook to get on, but she says the car stopped, apparently, she supposes, at the corner of the two streets. I would infer from the testimony that the horses had gone on to Smithfield street, and that the platform of the car was just crossing the lower side of Smithfield and Third, but she was not distinct in regard to that. She says that she had got one foot on the platform, the other foot on the step, and was holding to the railing; that her father was going along helping her on, and

after they had gone some distance she was jolted off and that she lit on her feet.   Just then, she was struck by something, she does not know herself what, and that is the last she knew for some considerable time.   Mr. McCully, the father, whose testimony was read to you, says, if I have understood his testimony, and it appears to be pretty distinct as to that, that they stopped below Smithfield street, so far below that the horses' heads would not be at the crossing of Smithfield and Third.   The car was coming up Third street, and he says the car stopped and Mrs. Trich undertook to get on, he helping her, and that he went on up to the middle of the street when she was jolted off.   Mr. Herrington says that he was standing at the upper corner, as I understood him, of Smithfield street and Third street, which would be the corner this way.   He said, if I understood his testimony, that the car had stopped; that he saw it start and saw the driver strike his horses with the reins, and that they started up with a lurch.   He seemed to think that this woman was not on the platform at all.   He says that she was partly leaning over, as though about to fall, when the horse struck her.   He says that the car was standing, was stopped, but he puts it about the middle of Smithfield street.   Mr. Herrington must be mistaken about the car being stopped when he saw it, or Mr. McCully is mistaken about it stopping down where he says it did, because they put the car nearly sixty feet apart.   Mrs. Trich says that Mr. McCully hailed the car and that it stopped.   Mr. Fry, the driver, says that he did not stop at all.   He says that he saw these with other parties standing there, and, being strangers, he gave the usual hail to know if they wanted the car, and no attention was paid to it.   Mrs Trich says her father nodded when the driver inquired.   The driver says he got no response, nothing to indicate that they wanted to get on the car, and he drove on not even stopping above Smithfield street, which would be the regular stop, in the ordinary way of stopping cars at crossings, where the horses would be past the corner and would not block the cross street.   Mrs. Vrailing, who says she was on the car (and I do not see any reason to doubt that she was), testifies that the car did not stop at all; that the driver did not know that Mrs. Trich was trying to get on; that she was trying to get on when the car was in motion; was unable to

do it, and was struck by the horse passing by. She says, however, that the driver stopped at the upper side of Smithfield street, where she also thinks a passenger or two got on. The driver says he did not stop, there being nobody there, and he drove on, and was not aware that his car had anything to do with the injury.

All the witnesses say that a runaway horse and buggy, or some single horse with a vehicle, came down Smithfield street, some of them call it, and some of them call it up, but from the direction of the post-office, and struck the woman very soon after she was off the car, or almost immediately after she let go her hold of the car.

Now it is an exceedingly important question in the case as to what did occur. The witnesses differ very greatly in their testimony. If the defendant driver, Mr. Fry, recognized their hail, recognized that they wanted to get on, and stopped his car, and then started before there was reasonable time for them to get on, the company is responsible for the natural consequences that might have been expected to arise from that neglect to wait until the passenger was on. If, without stopping, the driver was going on crossing the street and Mrs. Trich undertook to get on when the car was in motion at that point where Mr. Herrington says the car was at the time, it was negligence on her part, and the plaintiffs cannot recover.

But the court cannot determine what the facts are. They are for the jury. You are the judges of the credibility of the witnesses, and you are to harmonize their testimony as best you can. If I were on the jury, and it were my province to determine the credibility of the witnesses, I would not be disposed to find that anybody has sworn to what they do not believe is the truth.

[Then comes in another question on which the defendant's counsel have asked us to instruct you. They have asked us to say to you that, it being undisputed evidence in the case that Mrs. Trich was not injured by falling off the defendant's car, but by being struck by a runaway horse, even if the driver of the car was guilty of negligence, such negligence was not the proximate cause of the injury and the plaintiffs cannot recover. This is refused. It is a question for the jury under the evidence and under the further instructions of the court.

Charge of Court below.

We do not think that we can say precisely what the facts are in this case. On that point the rule of law is this : A party defendant is only liable for what are called the proximate results of his act; not for the remote consequences; not where some other independent matter intervenes that should not have been foreseen by the party guilty of the negligence. This matter has been discussed by counsel in your presence, and some illustrations given as to which I will venture to make some suggestions. The evidence seems to me to preponderate very largely in favor of the fact that the immediate force which caused the injury to this woman was the runaway horse. Whether it was the horse or the shafts struck her, nobody tells, and probably nobody knows. Now, assuming that the car stopped as the plaintiffs say; that it started improperly, and that she was jolted off where she says she was, by the negligent conduct of the driver—assuming all that to be true, if, before she could get away, a stone had been thrown from some building adjoining and struck her, when, if she had been on the corner or on the car it would not have struck her, clearly, the defendant company would not be liable. The proximate cause of the injury would be the stone falling on her; not her falling from the car. · Her being there was a mere accidental thing, and the car company would not be responsible, because they would have no right to anticipate that the consequence of their neglect would be that Mrs. Trich would be struck by a stone from the adjoining building; it was not to be expected; it would be too remote; and she could not recover. I give you that as an illustration, and the practical question for you in this case is, if you find (as I have little doubt you will find, in discussing this question), that the injury came from the force with which she was struck by the runaway horse, was the striking of a woman thrown off in this way a result that they would have a right or ought to anticipate would be the result of negligence in throwing her off the car at that place and point? I think the court should say that the driver was bound to take into consideration, at such a crossing, that vehicles would be passing and repassing, and that there is more or less danger of a person being struck by a vehicle before he could get out of the way, if thrown off in the middle of the street. But it is for the jury to say

whether or not, under the circumstances in this case, if they find that the driver was guilty of negligence, it was a consequence to be fairly anticipated that she would be struck by a passing vehicle or a passing horse before she could get out of the way.][2]

There does not seem to be much dispute among the witnesses as to where the accident occurred. It seems to have been some place about the middle of Smithfield street.

Now, you will pass upon these questions that lie at the foundation of the plaintiff's case, without any prejudice or sympathy, or feeling, one way or the other. It is the business of the court and jury to decide cases in accordance with the law and the testimony in the case, without any favor to either side. Courts and juries cannot know parties without a violation of duty. If you find that the plaintiff, Mrs. Trich, was guilty of negligence in the manner in which she undertook to get on the car, then you will find for the defendant. If you fail to find that the driver was guilty of negligence, you will find for the defendant. If you find that the driver was guilty of negligence by which the plaintiff was thrown off (and I will not again go over the explanation I have given you of what would be negligence, or go over the alleged facts on this point), and that the natural consequence of that act ought to have been anticipated to occur, and you find that Mrs. Trich was not guilty of negligence, your verdict ought to be for the plaintiffs; and you would come to the question of damages. . . . . .

The jury found for the plaintiff in No. 617, $377.75, and for the plaintiff in No. 618, $932.50, and judgments were entered. The defendant company thereupon took these writs, assigning for error:

1. The refusal of the defendant's point.[1]
2. The part of the charge embraced in [ ][2]

*Mr. John Dalzell* (with him *Mr. Geo. B. Gordon*), for the plaintiff in error:

1. It is apparent, and as to this there was no conflict, that Mrs. Trich was not in any way injured except by the runaway horse and buggy, an intervening and independent agency over which the defendant had no control. How could the car-driver anticipate that his starting the car would cause Mrs.

Opinion of the Court.

Trich to fall off in the middle of the street, and that a runaway horse and buggy would happen to come along just at that time and place? That it is the duty of the court, when the facts are undisputed, to instruct the jury whether the negligence alleged was or was not the proximate cause of the injury, there can be no doubt: West Mahanoy Tp. v. Watson, 112 Pa. 574; s. c. 116 Pa. 344; Hoag v. Railroad Co., 85 Pa. 293 ; Fairbanks v. Kerr, 70 Pa. 90.

· *Mr. A. Blakeley* (with whom was *Mr. A. M. Blakeley*), for the defendants in error:

1. We contended below, upon the evidence, that it was negligence in the driver to start his car while Mrs. Trich was in the act of getting on, and that it was continued, increased and wilful negligence for him to whip up his horses while she was in that position. It was uncertain whether the fall from the car or the stroke from the runaway horse, produced the injury. Hence the instruction prayed for could not have been given.

2. In West Mahanoy Tp. v. Watson, and Hoag v. Railroad Co., the facts were undisputed. In the case at bar the question of proximate cause was properly submitted to jury: Penn. R. Co. v. Hope, 80 Pa. 373; Penn. & N. Y. Canal & R. Co. v. Lacey, 89 Pa. 458; Lehigh V. R. Co. v. McKeen, 90 Pa. 122.

OPINION, MR. JUSTICE GREEN :

There is no manner of question as to what was the actual and immediate cause of the injury inflicted upon Mrs. Trich. It was an entirely undisputed fact that she was struck and injured by a runaway horse and buggy. All the witnesses who saw the occurrence so testify. Thus, Mr. McCully, the father of Mrs. Trich, who was present with her at the time and was examined on her behalf, after describing her attempt to get on the car and saying that she was bounced off, adds : "A moment or two afterwards here comes a runaway horse and buggy down the street and the shaft, I suppose it was, caught her under the arm and dragged her to the street crossing and she fell away." The only other witness examined for the plaintiffs as to the facts of the occurrence, M. M. Herrington, testified : " There is a banking building there on the corner, and I saw the lady fall—fall off—and when she fell, to the best

of my knowledge she kind of threw herself back this way and there was a phaeton or buggy of some kind running—a horse running down the street with a buggy—and it struck her, and they picked her up and carried her into Mr. Johnson's drug store." There was no contradiction of this testimony. But one other witness, Mrs. Vrailing, examined by the defendant, testified to the fact of the injury and she also said it was done by the buggy striking the woman.

The learned court below, in the charge, said: "The evidence seems to me to preponderate very largely in favor of the fact that the immediate force which caused the injury to this woman was the runaway horse." This was an understatement of the testimony which might have led the jury to suppose that there was an open question, with a preponderance of evidence only, as to whether it was the runaway horse and buggy which inflicted the injury. The defendant had presented a point stating that it was the undisputed evidence that Mrs. Trich was injured by being struck by a runaway horse, so that the question was directly before the court. In view of that circumstance we think the court should have specifically so charged and not left it as an open question for the jury to determine, with a mere expression of opinion that the evidence preponderated in that direction.

Assuming then, as we do, that it was the undisputed evidence that the injury was inflicted by the runaway horse and buggy, the only remaining question is whether it was the duty of the court to declare whether this was the proximate cause of the injury. The point presented by the defendant asked for such an instruction, but the court refused it, saying it was a question for the jury under the evidence. In this we think there was error. In the case of West Mahanoy v. Watson, 112 Pa. 574, we reversed the court below for making just such an answer to just such a point; and upon a review of the facts of the case we held that they did not constitute an instance of proximate cause as against the defendant, and therefore decided that the defendant's point should have been affirmed, which took the case from the jury. Mr. Justice PAXSON in delivering the opinion said: "While it is undoubtedly true as a general proposition that the question of proximate cause is for the jury, yet it has been repeatedly held that

where there are no disputed facts the court may determine it. It is sufficient to refer to Hoag v. The Railroad Co., 85 Pa. 293. In that case this court, following Railroad v. Kerr, 62 Pa. 353, and Railroad Co. v. Hope, 30 Pa. 373, laid down the rule as to proximate cause as follows: " In determining what is proximate cause the true rule is that the injury must be the natural and probable consequence of the negligence; such a consequence, as under the surrounding circumstances of the case might and ought to have been foreseen by the wrong-doer as likely to flow from his act."

Applying this rule to the facts of the present case, can it be said that the injury of Mrs. Trich was the *natural* and *probable* consequence of the car-driver's negligence in urging his horses to a faster gait? We think not. There was not a particle of evidence to show that runaway horses and vehicles were frequently, or indeed ever, seen upon Smithfield street where this accident occurred. There was no evidence upon that subject. It was certainly not a *natural* consequence of a person being upon that street that he would be struck by a runaway horse. Nor is there the slightest reason for saying that it would be a *probable* consequence. The utmost that can be said would be, that such a consequence might possibly happen. But things or results which are only possible cannot be spoken of as either probable or natural. For the latter are those things or events which are likely to happen and which for that reason should be foreseen. Things which are possible may never happen, but those which are natural or probable are those which do happen, and happen with such frequency or regularity as to become a matter of definite inference. To impose such a standard of care as requires, in the ordinary affairs of life, precaution on the part of individuals against all the possibilities which may occur, is establishing a degree of responsibility quite beyond any legal limitations which have yet been declared. We are of opinion that in the facts of the present case the direct and immediately producing cause of Mrs. Trich's injury was her being struck by a runaway horse and buggy over which the defendant company had no sort of control and for which it is not responsible; and therefore .we conclude that the proximate cause of the injury in the legal sense, was the collision of the horse and buggy with the person of Mrs. Trich and not the negligence of the defendant.

Opinion of the Court.

The case of West Mahanoy v. Watson came again into this court and is reported in 116 Pa. 344. The present chief justice in delivering the opinion of the court said: " These facts narrow the case down to the single question, was the upset at the ash-heap on the township road the immediate or direct cause of the loss of the horses ? As we have seen the facts themselves answer this interrogatory in the negative and necessarily determine the case in favor of the plaintiff in error. In the case of Hoag v. Michigan Southern & Lake Shore Railroad Co., 85 Pa. 293, Mr. Justice TRUNKEY, then president of the Common Pleas of Venango county, in his charge to the jury on the trial of the above named cause said: ' The immediate and not the remote cause is to be considered. This maxim is not to be controlled by time or distance, but by the succession of events. The question is, did the cause alleged produce its effect without another cause intervening, or was it to operate through or by means of this intervening cause ? ' As the principle here stated was adopted by the affirmance of this court following Pennsylvania Railroad v. Kerr, 62 Pa. 353, we may regard it as the settled law of this state."

In the facts of the present case we find a perfect illustration of this principle. Mrs. Trich herself testified that when she was " bounced " from the car she fell on her feet. Immediately after, she was struck by the runaway horse and buggy and from them received her injury. The jolting from the car simply landed her on her feet and inflicted no injury. But another agency intervened which was entirely independent of any act of the defendant, and that agency alone inflicted the injury in question. Following the doctrine of the last case cited we feel clearly obliged to hold that the plaintiff's injury was inflicted by the special intervening agency stated, and therefore the defendant is not liable. In all the cases cited, as in several others not referred to, this court finally determined them upon its own view of the facts without regard to the verdicts of the juries. The defendant's point should have been affirmed.

Judgment reversed.