Amy Swanson, by her Next Friend and Father, C. A. Swanson, *v.* Charles Crandall and Martha Crandall, Appellants.

*Negligence—Proximate cause—Words and phrases.*

In determining what is proximate cause the true rule is, that the injury must be the natural and probable consequence of the negligence; such a consequence as under the surrounding circumstances of the case might and ought to be foreseen by the wrongdoer as likely to flow from his acts.

*Evidence—Negligence must be proved—When a question not for jury.*

Negligence must be proved. When the uncontradicted evidence does not warrant the jury in inferring negligence as the proximate cause of an injury, the court should direct a verdict for defendant.

*Negligence—Proximate cause—Binding instructions.*

The evidence disclosed the following facts: A loaded revolver was kept in the upper drawer of a chiffonier, which was used exclusively by the head of the family, and in his absence from the room, while his wife was in bed with her face averted, a five years' old child in quest of play, discovered and accidentally discharged revolver to the plaintiff's injury. *Held*, That placing the revolver in the drawer was not the natural and probable or proximate cause of the injury, and, the evidence being undisputed, the jury should have been instructed to find for the defendants.

Argued May 20, 1896. Appeal, No. 26, April T., 1896, by defendants, from judgment of C. P. Warren Co., March T., 1895, No. 79, on verdict for plaintiff. Before RICE, P. J., WILLARD, BEAVER, REEDER, ORLADY and SMITH, JJ. Reversed.

Trespass. Before NOYES, P. J. Verdict for plaintiff for $300.

The facts were stated by the opinion of the Superior Court as follows:

Amy Swanson, aged nineteen, was engaged by appellants as a nurse girl; her duty being to care for a babe three months old, and incidentally of a little girl (Evelyn) five years of age, their clothing and her own room.

The family was composed of appellants, the children mentioned, the plaintiff and another servant.

About 7 o'clock A. M. of October 27, 1894, the nurse girl

entered the bedroom occupied by Mrs. Crandall and her baby, when, as explained by the plaintiff, she received the injuries complained of under the following circumstances:

Q. Now when you went into the room what did Mrs. Crandall say to you? A. I went up to the crib to take the baby, and Evelyn she came in and asked me if I wouldn't dress her first so she wouldn't take cold, and she would attend the baby; and I did. Q. You dressed Evelyn first? A. Yes, sir. Q. After you dressed Evelyn what did you do next? A. I took the baby and sat down in the little rocking chair by the window. Q. Now, after you took the child and sat down there, what was the first thing you saw of Evelyn? A. Saw her over by the side of the stove with a revolver in her hands. Q. What did you do? A. I asked her to put it up and she kind of looked at me and laughed; and I asked her again, and she didn't pay any attention, and all of a sudden she fired it off. Q. What do you know, if anything, about there being a revolver there before you saw Evelyn have it on the day before or the day of the accident? A. I didn't know anything about it at all. Q. What do you know, if anything, as to where Evelyn got the revolver from, either that day or the day of the accident? A. I didn't see where she got it or didn't see where she put it back. I know she went and put it back, but didn't pay any attention to where she put it.

And on cross-examination: Q. Now, you saw Evelyn get the revolver? A. No, sir, I didn't see her when she got it. Q. You spoke of the revolver being in the chiffonier, I understood you to say something about it. A. Yes, sir. Q. Was that what it was? A. That is where it was supposed to be; I can't just say where in the chiffonier, but that is where it was supposed to be. Q. Kept in the upper drawer of the chiffonier? A. That is where they stated; I don't know whether it was kept in the upper or lower one, for I don't know where it was. Q. Was that a tall piece of furniture with drawers up and down in it? A. Yes, sir. Q. But that was the place where it was kept? A. That is where I suppose it was; they said it was in the top drawer, what l heard after I was injured. Q. How close to that chiffonier were you sitting? A. I was sitting quite close to it · the chiffonier was right back of me. Q. Evelyn must have got the revolver while you sat there, didn't she? A. Yes, sir.

Q. Why didn't you take the revolver away from her? A. There was no time. Q. Mrs. Crandall was lying with her face to the wall on the bed? A. Yes, sir.

Mr. Crandall was asleep in an adjoining room at the time plaintiff was injured. The discharge of the revolver by the five year old child resulted in a 22-caliber bullet wound in the right groin of plaintiff producing suffering, confinement to bed for over five weeks, subsequent weakness and pain.

The plaintiff called another witness to prove statements made by Charles Crandall in explanation of the accident that the revolver was lying in the upper drawer of a bureau of some kind, under a book; that the child picked up the book and noticed the revolver, then took the revolver to play with, accidentally discharged it, and wounded Miss Swanson; that he had always kept it there and never knew of the child going there before.

The allegation of plaintiff, in her statement was, " that the injuries were received by and through the direct negligence and carelessness of the defendant in negligently and carelessly permitting and allowing Evelyn Crandall to have and play with the loaded revolver, and in putting, placing and permitting to remain the loaded revolver in a place where Evelyn Crandall could and did get the same and use as a plaything."

The proof offered as to the knowledge of the parties to this action in regard to the location of the revolver was quite indefinite.

The second assignment of error, is the answer to defendant's ninth point, as follows :—

Ninth. Under all the evidence in this case the plaintiff is not entitled to recover. *Answer:* I answer this in the negative; regarding the case as peculiarly for the jury under all the facts. [2]

The third assignment is from the general charge: " I therefore instruct you that you need not regard the act of the child as an intervening cause in determining whether or not any negligent act of these defendants was the immediate and proximate cause of the injury to the plaintiff." [3]

*Errors assigned* were, among others, (2) answer to plaintiff's ninth point, refusing binding instructions for defendant;

(3) error in portion of the general charge, reciting same as set out in the statement of facts.

*Jas. O. Parmlee* of *Lindsey & Parmlee,* with him *Hinckley & Rice,* for appellants, as to the father's liability, cited: McManus v. Crickett, 1 East, 106 ; Tifft v. Tifft, 1 Denio, 175 ; Schouler's Domestic Relations, 5th. ed. sec. 263 ; 17 Am. & Eng. Ency. of Law, 392 ; Hoverson v. Noker, 60 Wis. 511. The principle contended for by us is well supported by Edwards v. Crume, 13 Kan. 261 ; Wilson v. Garrard, 59 Ill. 51 ; Chandler v. Deaton, 37 Tex. 406 ; Baker v. Haldeman, 24 Mo. 219 ; Newsom v. Hart, 14 Mich. 233 ; Beedy v. Reding, 16 Me. 362.

We are not without support in our own state : Hower v. Ulrich, 156 Pa. 410. As to 3d assignment of error cited 2 Greenleaf on Evidence, sec. 256, that, "the damages to be recovered must be the natural and proximate consequences of the act complained of : Morrison v. Davis, 20 Pa. 171 ; Penna. R. R. Co. v. Kerr, 62 Pa. 353 ; O. C. & A. R. R. Co. v. Keighron, 74 Pa. 316 ; Hoag v. L. S. & M. S. R. R. Co., 85 Pa. 293.

When facts are undisputed it is the duty of the court to pass upon the question as one of law : Behling v. Pipe Lines, 160 Pa. 365.

*Geo. H. Higgins,* of *Brainerd & Higgins,* for appellee.—Negligence is the absence of care under the circumstances : R. R. v. Layer, 112 Pa. 414. It may arise either by an act done or an omission to act.

Negligence of the defendant is the proximate cause when the injury is such a direct and immediate consequence of the negligence as, under the surrounding circumstances of the case, a person of ordinary care and prudence might and ought to have foreseen as likely to follow from the negligence : 16 Am. & Eng. Ency. of Law, 432, 433, note 1, p. 429 ; Hoag and Alger v. L. S. & M. S. R. R. Co., 85 Pa. 293.

On the question of proximate cause, cited Koelsch v. Phila. Co., 152 Pa. 355 ; Gas Co. v. Robinson, 99 Pa. 1.

OPINION BY ORLADY, J., July 16, 1896 (after stating the facts as above) :

The doctrine of proximate and remote cause has been decided in a great variety of cases. One of the most valuable of the

criteria furnished by the authorities, is to ascertain whether any new cause has intervened between the fact accomplished and the alleged cause. If a new force or power has intervened of itself, sufficient to stand as the cause of the misfortune, the other must be considered as too remote.: L. Mut. Ins. Co. v. Tweed, 7 Wall. (U. S.) 44–53.

If two distinct causes are operating at the same time to produce a given result which might be produced by either, they are concurring causes. They run together as the word signifies to the same end. But if two distinct causes are successive and unrelated in their operation, they cannot be concurring. One of them must be the proximate and the other the remote cause. When they stand in this relation to each other and the result to be considered, the law regards the proximate as the efficient and responsible cause, and disregards the remote: Herr v. City of Lebanon, 149 Pa. 222.

In determining what is proximate cause, the true rule is, that the injury must be the natural and probable consequence of the negligence; such a consequence as under the surrounding circumstances of the case might and ought to be foreseen by the wrongdoer as likely to flow from his act: Hoag v. The Railroad Co., 85 Pa. 293 ; Pass. Ry. Co. v. Trich, 117 Pa. 390 ; Railway Co. v. Kellogg, 94 U. S. 475.

The natural consequence of an act is the consequence which ordinarily flows from it—the result which may reasonably be anticipated from it. The probable consequence is one that is more likely to follow the supposed cause than it is to fail to follow it: C. St. P. M. & O. Ry. v. Elliott, 5 (U. S.) C. C. A. 347.

The evidence in the case shows that a loaded revolver was kept in the Crandall home, in an upper drawer of a chiffonier, which was used exclusively by the head of the family, and in his absence from the room, while the wife was in bed with her face averted, a five year old child in quest of play, discovered and accidently discharged it to the plaintiff's injury. Can it be said that the injury was the natural and probable result of placing the revolver in the place as alleged by the plaintiff ?

It was not a natural consequence, nor is there any reason for saying it would be a probable consequence. The utmost that can be said would be that such a consequence might possibly

happen. But things or results which are only possible cannot be spoken of as either probable or natural. For the latter are those things or events which are likely to happen and for that reason should be foreseen. Things which are possible may never happen, but those which are natural or probable are those which do happen and happen with such frequency or regularity as to become a matter of definite inference. To impose such a standard of care as requires, in the ordinary affairs of life, precaution on the part of individuals against all the possibilities which may occur, is establishing a degree of responsibility quite beyond any legal limitations which have yet been declared : Pass. Ry. Co. v. Trich, supra. If the precautions.taken in this case to keep a proper weapon, admittedly of a dangerous character where it would be safe and convenient of access in time of emergency were not sufficient, it might be gravely doubted if such a weapon could be kept anywhere on the premises to be at all times secure from the infantile marauder.

There was no dispute as to the material facts. The slight difference between Miss Swanson and Mrs. Crandall as to the revolver being handled the previous day would not change the result. The plaintiff did not pretend to say she knew where the child got the revolver the day of the accident. There was no proof as to that fact. All parties inferred it was taken from the drawer in which Mr. Crandall had placed it several days before. Negligence must be proved. When the uncontradicted evidence does not warrant the jury in inferring negligence as the proximate cause of an injury, the court should direct a verdict for the defendant: Behling v. Pipe Lines, 160 Pa. 359 ; Scott v. A. V. Ry. Co., 172 Pa. 646.

As placed by Mr. Crandall the revolver was perfectly harmless, and, save for the intervention of baby fingers, would not have caused the injury. Its discovery by the child could not have been reasonably anticipated by him. He was not present at the time of the accident. The wife was not negligent in giving the care of Evelyn to the nurse girl, and had the right to expect that attention would be so given as to prevent injury to either child. In the moment of time following the dressing of the little girl, the plaintiff could not be charged with contributory negligence in its legal sense. The unfortunate occurrence was an event which resulted undesignedly and unex-

pectedly, and which could not have been reasonably anticipated as a usual and natural result.

The injury to the plaintiff was caused by a mere child, without the knowledge of its parents, not induced by negligence of either, without advantage to or ratification by them, and for which under the authorities there is no liability on their part: 17 Am. & Eng. Ency. of Law, 392 and notes ; Hower v. Ulrich, 156 Pa. 410 ; Hagerty v. Powers, 66 Cal. 368 ; 56 Am. Repts. 100 ; Smith v. Davenport, 23 Am. Repts. 737 ; Haverson v. Noker, 50 Am. Repts. 383.

The second and third assignments of error are sustained, which disposes of the case.   The court should have directed a verdict for the defendant.   The judgment is reversed.   The costs to be paid by the appellee.