# Chester National Bank, Appellant, *v.* Southern Pipe Line Company.

*Pipe line companies—Leakage of oil—Proximate and remote cause—Act of stranger—Burning of mill—Negligence.*

1. In an action against an oil pipe line company incorporated under the general incorporation Act of April 29, 1874, P. L. 73, and its supplement of June 2, 1883, P. L. 61, to recover damages for the burning of a mill, where it is established that there was no negligence either in the construction, maintenance or operation of the pipe line, the court commits no error in submitting to the jury the question whether the breaking of the line was the proximate cause of the burning of the mill, where the evidence shows that the distance from the pipe line to the mill was about 800 feet, that after the break the oil spread over the ground and water between the pipe line and the mill, that an idler on the scene lighted a cigar and threw the blazing match on the ground, that the oil was instantly aflame, and was carried in this flaming condition to the walls of the mill, setting it on fire, and that under certain different conditions of time or wind or tide, the flames might not have reached the mill.

2. When conditions group themselves into unusual or varying forms; when the inference to be drawn from established facts may change with the personalty of him who makes them; when the mind hesitates to affirm just what a reasonable man would likely do under the circumstances, then the ascertainment of the legal duty becomes a mixed question of law and fact and must be submitted to a jury.

Argued Nov. 19, 1908.   Appeal, No. 194, Oct. T., 1908, by plaintiff, from judgment of C. P. Del. Co., Sept. T., 1906, No. 164, on verdict for plaintiff in case of Chester National Bank v.

Southern Pipe Line Company. Before RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY, HEAD and BEAVER, JJ. Affirmed.

Trespass to recover damages for the burning of a mill. Before JOHNSON, P. J.

From the record it appeared that on April 25, 1906, a leak occurred in defendant's pipe line, and that large quantities of oil escaped and flowed over land and water intervening between the pipe line and plaintiff's mill. A crowd assembled, and one of the men, a stranger, struck a match to light a cigar and threw the lighted match on the ground. As a result the oil took fire and the flames were communicated to the mill and destroyed it. The relative situation of the mill and the pipe line and other circumstances connected with the accident are set forth in the opinion of the Superior Court.

The court charged in part as follows:

[The destruction of this mill must have been the natural consequence, the natural and probable consequence of the break in that pipe, and there must have been no independent and intervening cause without the happening of which this fire would not have occurred.

Now, was there an independent, intervening cause which, if absent, there would have been no fire? If there was, this plaintiff cannot recover for the loss of that mill. Now, the intervening cause that is set up here by the defendant is this boy or young man, Bryan, and it is contended by the defendant that they had no control over Bryan, had nothing whatever to do with him, and that without him, his appearing upon the scene and lighting this match and throwing it upon the ground, this mill would not have been burned, and their contention is that that is an independent, intervening cause over which they had no control and which they could not foresee, and, therefore, they are not liable. The defendant further contends that there was another independent intervening cause, and if it had been absent there would have been no burning of the mill, and that was this stream, and you will say to what extent the current of that

stream, whether it carried the oil down in front of the mill and thus contributed to its burning—whether without that there would have been no burning of the mill, and whether that was an intervening, independent cause which the defendant could not reasonably and is not called upon to foresee.

This is the great point in this case so far as the mill and machinery is concerned. We will go to the lot afterwards. If you find from all the evidence in this case that this oil flowed out of the pipe—that is not denied—and that the burning of this mill was the natural and probable consequence of that act, and that there was no intervening cause except natural causes—no intervening cause without the happening of which it would not have occurred—then this plaintiff cannot recover so far as the mill is concerned; but if you find that it was the natural and probable consequence of that break in the pipe and the flow of the oil from it, and that there was no intervening cause without which the burning would not have taken place, then they are liable, under this act, and must pay whatever damage this plaintiff suffered.] [1]

[If you find that this breaking of this pipe, that the burning of this mill was the natural and probable consequence of that break in the pipe, and the flow of the oil, and there was no intervening cause between this break and the fire, without the happening of which the fire would not have taken place, then award to the plaintiff whatever the value of the property burned, that is, the mill and machinery, will be. If you do not find that—find that this was not—we repeat it, because these terms are probably new to you—not the natural and probable consequences, that is, the burning—find there was an intervening cause, without the happening of which there would have been no fire, then they are not entitled.] [2]

[There is no doubt the pipe leaked; there is no doubt it ran down the road; no doubt that the boy fired it by throwing a match into it; no doubt that it burned the mill, and the only question is, so far as this verdict is concerned, and recovery for the burning of the mill—was there an intervening, independent cause without the happening of which there would have been no fire? If there was, this plaintiff cannot recover. If there was

not, in the judgment of the jury, and it was the natural and probable consequence, the burning was the natural and probable consequence of this break, then you may find for the plaintiff.] [3]

Plaintiff presented these points:

5. If the jury find that the fire which damaged the plaintiff's property was caused by a stranger negligently or accidentally striking a match on the highway, at a time and place when oil was escaping from the defendant's pipe, and flowing in such quantities as to make a conflagration from such cause possible or probable, and that the presence of oil on the highway was due to the negligence of the defendant, and that this negligence of the defendant in permitting the escape of the oil, concurring with the act of the match lighter, was necessary to and did cause the conflagration, then the defendant is responsible for the damages thus caused. *Answer:* That is affirmed; unless you find that this burning was not the natural and probable cause, and there was no independent intervening cause without which this fire would not have happened. [4]

7. If the jury find that the fire was caused by a stranger negligently or accidentally striking a match on the highway, at a time and place when and where oil was escaping from the defendant's pipe and flowing along the highway and into the creek in such quantities as to make an accidental conflagration from such cause, and the destruction thereby of the plaintiff's property possible or probable, and that in consequence of such fire the plaintiff's mill was consumed, and that the escape of the oil, concurring with the act of the match lighter, was necessary to and did cause the conflagration, then the defendant is responsible for the plaintiff's damage, even although the oil did not escape through the defendant's neglect. *Answer:* That is affirmed, with the remarks that we have repeated over and over again relative to the natural and probable consequence and the intervening cause. [5]

8. The escaping oil was the proximate cause of the injuries complained of in this case, if they were its natural and probable consequences, and as such ought to have been foreseen by the defendant as likely to result from the escape of its oil. *Answer:*

We decline to say that it was the proximate cause; but we submit to the jury the question whether it was or not. [6]

Verdict and judgment for plaintiff for $300. Plaintiff appealed.

*Errors assigned* among others were (1–6) above instructions, quoting them.

*George P. Rich,* with him *George B. Lindsay, William B. Harvey* and *Frank R. Shattuck,* for appellant.—The defendant company is liable for the damages caused by escaping oil from its pipe, in the absence of proof that the escape of such oil was due to its negligence: Denniston v. Phila. Co., 161 Pa. 41; Hauck v. Pipe Line Co., 153 Pa. 366; Rogers v. Traction Co., 182 Pa. 473.

The court below erred in leaving the question of proximate cause to the jury: Wood v. R. R. Co., 177 Pa. 306; Gudfelder v. Ry. Co., 207 Pa. 629; Douglas v. R. R. Co., 209 Pa. 128; West Mahanoy Township v. Watson, 116 Pa. 344; Behling v. Pipe Lines, 160 Pa. 359; Penna. R. R. Co. v. Hope, 80 Pa. 373; Haverly v. R. R. Co., 135 Pa. 50; Sturgis v. Kountz, 165 Pa. 358; Scott v. Ry. Co., 172 Pa. 646; Burrell Twp. v. Uncapher, 117 Pa. 353; Cohn v. May, 210 Pa. 615; Bannon v. R. R. Co., 29 Pa. Superior Ct. 231.

So far as the act of the stranger in starting the fire may be considered as the proximate cause of the injury, this case, it is conceived, is settled by Koelsch v. Philadelphia Co., 152 Pa. 355. Either that case is not good law, or the instructions to the jury in this case were erroneous: Oil City Gas Co. v. Robinson, 99 Pa. 1.

In submitting to the jury the question whether the water of the creek was not an intervening cause, totally unlooked for and not to be expected, which by permitting the burning oil to float across its narrow width to the mill on the opposite side, and thus set it on fire, became the proximate cause of the accident, the court followed the law as it understood it to be laid down in Pennsylvania R. R. Co. v. Kerr, 62 Pa. 353, and Hoag v. Railroad Co., 85 Pa. 293.

The first of these cases has been repeatedly discredited and practically overruled. The facts of the second are so totally dissimilar to the facts in this case, that it is difficult to see how it can be applied as a ruling decision here: Penna. R. R. Co. v. Hope, 80 Pa. 373; Haverly v. R. R. Co., 135 Pa. 50; Lehigh Valley R. R. Co. v. McKeen, 90 Pa. 122.

*O. B. Dickinson,* for appellee.—The court did not err in submitting the question of proximate cause to the jury: R. R. Co. v. Kerr, 62 Pa. 353; Hoag v. R. R. Co., 85 Pa. 293; Douglass v. R. R. Co., 209 Pa. 128; R. R. Co. v. Hope, 80 Pa. 373; Haverly v. R. R. Co., 135 Pa. 50; Scott v. Ry. Co., 172 Pa. 646.

OPINION BY HEAD, J., July 14, 1909:

The appellant does not contend that the learned trial court improperly admitted or rejected any evidence on the question of the alleged negligence of the defendant; nor that the existence of such negligence should have been declared as a matter of law; nor that, in submitting this question to the jury, any erroneous instructions were given. In so far, therefore, as the plaintiff rested its case on the proposition that the defendant was negligent it is concluded by the·verdict, which establishes there was no negligence either in the construction, maintenance or operation of the defendant's pipe line.

The plaintiff, however, contends its right to recover exists independent of any act of negligence by the defendant because the company was incorporated in 1890, as an oil pipe line company, under the provisions of the act of 1874, and its supplements. That the Act of June 2, 1883, P. L. 61, which is a supplement to the act of 1874, contains this proviso: "And provided further that any company laying a pipe line under the provisions of this act, shall be liable for all damages occasioned by leakage, breaking of pipes or tanks, etc."

That, as a result of this enactment, there was imposed on the defendant the liability of an insurer against all injuries to person or property that would follow or be caused by a leak in its line.

Inasmuch as the learned court below held with the plaintiff on this question, and the defendant has not appealed, the cor-

rectness of this conclusion is not now before us for review and we express no opinion concerning it.

In so holding, however, the court confined the liability of the defendant to such injuries as were the natural and probable consequences of the leakage in its line; in other words, to the results of which the leakage could be legally said to be the proximate cause. To the correctness of this the learned counsel for appellant frankly assents.

But the court submitted to the jury, as a matter for their determination under all the evidence in the case, the question whether or not the break in the defendant's pipe line and the consequent escape of the oil, was the proximate cause of the burning of the plaintiff's mill. If this action of the learned trial court was correct this appeal presents but little else on which we could be asked to reverse the judgment.

Our books of reports exhibit a multitude of cases in which our courts have pointed out how the proximate cause—legally speaking—of the last of a chain of events, may be distinguished from an intervening or independent cause. Most if not all of these cases were actions founded on negligence. In Hoag v. Railroad Co., 85 Pa. 293, Mr. Justice PAXSON, speaking for the court, said: "In determining what is proximate cause, the true rule is, that the injury must be the natural and probable consequence of the negligence—such a consequence as, under the surrounding circumstances of the case, might and ought to have been foreseen by the wrongdoer as likely to flow from his act." This language has been frequently cited with approval: South Side Pass. Ry. Co. v. Trich, 117 Pa. 390; Morford v. Sharpsville Borough, 28 Pa. Superior Ct. 544,—and leaves nothing further to be said on the subject.

Now we think it must be conceded that if, in the disposition of a cause, it becomes necessary to ascertain what is reasonable, ordinary, natural or probable, our only recourse is to the common experience of average men and, under our system of jurisprudence, the jury has long been thought to be the tribunal best qualified to determine and declare the result. We may grant that courts not infrequently have to deal with situations of such constant recurrence that the rule of the reasonable and

ordinary has become so manifest and so generally recognized that it may be properly formulated into a rule of law. But, as we said in Portland Ice Co. v. Connor, 32 Pa. Superior Ct. 428, " When conditions group themselves into unusual or varying forms; when the inference to be drawn established facts may change with the personality of him who makes them; when the mind hesitates to affirm just what a reasonable man would likely do under the circumstances, then the ascertainment of the legal duty becomes a mixed question of law and fact and must be submitted to a jury."

The important facts in the case, and they may be fairly said to be without dispute—as we gather them from the record and from a detailed plan, drawn to a scale and conceded to be correct, may be thus stated: The pipe line of defendant, buried in the ground, crossed the Chester pike at a point about 700 feet west of Crum Creek. This stream is shown on the plan to be from eighty to 100 feet wide. It is said by the appellee, in its paper-book, that it is a tidal stream. The evidence is silent on the subject, but, if it be a fact, it is such a physical fact of nature, that a court could properly take judicial notice of it without evidence. The highway is carried across this stream by a tight bridge. Just below the bridge and a few feet back from the east bank of the creek stood the mill of the plaintiff. There is·shown a narrow channel probably at one time a mill race, through which the waters of the creek, when at a sufficient stage, could flow to the walls of the mill building. The distance from pipe line to mill was 807 feet. The ground gradually sloped from line to stream, the fall to the water surface being sixteen feet in the distance mentioned. The break probably occurred about eight o'clock in the morning, and the oil began to flow, first in the water tables, then gradually spreading over the road itself and finally upon and over the flat land adjoining on both sides. The map shows that on the north side of the road, where the bulk of the escaping oil was carried, the ground for about 300 feet west of the creek is a dead level.

A number of people quickly gathered. One of these, a stranger to the defendant, in no way under its control, a mere idler on the scene, ignorant or heedless of the manifest danger

of such an act lighted a cigar and threw the blazing match on the ground. Instantly the oil was aflame. By this time a considerable quantity of it had evidently reached the creek and spread over its surface. One witness, describing the swift, almost instantaneous, spread of the flames, said: "When it struck the creek this arch over the road formed the furnace for it, like, and it ran both ways." The condition of the water was such that the blazing oil was carried right up to the walls of the plaintiff's mill and it was destroyed. As soon as the oil that had escaped, before it was fired, had been consumed, the flames naturally receded to the immediate locality of the break and there continued to burn until the flow of oil in the line was stopped.

It seems clear enough to us that the destruction of the mill, under these circumstances, was in no sense the necessary or inevitable consequence of the break in the pipe. It was not even within that domain of imminence or probability that would have existed had the defendant, in the prosecution of its own business, maintained a fire near its line from which the flames were communicated to the escaping oil. We must now concede the possibility that a grown up man, through ignorance, curiosity, or general heedlessness might cast a burning match practically into a stream of flowing oil; but it is not too much to say that such an act would be about the last to be expected from a rational human being.

The Deshong house, which stood about halfway between the break and the creek and within, perhaps, fifty feet of the point where the fire started, escaped, while the mill was destroyed. Had the match come a little sooner, before any body of oil had reached the water, the oil would have been consumed, the mill saved. If the stream be a tidal stream, one stage of the tide would have carried the oil away from the mill until the flames had expended themselves. Under certain conditions of wind and current the burning oil might have been carried downstream close to its west bank, passing the mill but destroying some other building lower down.

Under the facts we have recited and the possible—and more or less probable—conditions to which we have adverted, the learned trial court did not undertake to declare, as matter of

law, that the plaintiff's loss was due to the intervention of an independent cause, thus relieving the defendant from responsibility. Conversely, to have instructed the jury that the break in the line was the proximate cause of the burning of the mill, leaving to them merely the assessment of the damages, would have been, in our opinion, a stretch of judicial power beyond the limits of established precedents. The submission of the question to the sound discretion of the jury, under proper instructions, was a disposition of the case in harmony with the long line of authorities cited by counsel on both sides.

The case of Koelsch v. Phila. Co., 152 Pa. 355, we cannot regard as authority for the appellant's contention that the court below should have disposed of the question of proximate cause as a matter of law. There the defendant had negligently permitted gas from its line to fill plaintiff's cellar. It sent an employee, Householder, to find or repair the leak. One Walters went with him. He was either a fellow servant or a volunteer. One of them struck a match in the cellar and the explosion followed. The court below submitted the case to the jury, saying: "In our opinion it makes no difference whether Walters struck the match or the agent of the company, they were both together in a common employment." A verdict and judgment for the plaintiff followed. But neither in the facts of the case, nor in the opinion of the Supreme Court affirming the judgment, can we discover any foundation broad enough to support the conclusion which the able counsel for appellant seek to rest thereon.

In a portion of the considerable excerpt from the charge, which is made the subject of the first assignment, there is undeniably some confusion or obscurity probably due to haste incident to a trial. Reading part of it by itself might leave the impression the court regarded the existence of the water in the creek, even under normal conditions, as measuring up to the standard of an independent cause. If so, this was almost immediately corrected, and we think when the charge is regarded as a whole, the jury must have correctly understood the nature of the question submitted to them.

Being of the opinion the case was tried along proper lines and

that the record exhibits no reversible error, the assignments are all dismissed.

Judgment affirmed.